**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Jose LOMBERA–CAMORLINGA,**
**Defendant–Appellant.**

No. 98–50347.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 2, 1999.

Decided March 25, 1999.

Benjamin L. Coleman, Federal Defenders of San Diego, Inc., San Diego, California, for the defendant-appellant.

Paul C. Johnson, Assistant United States Attorney, San Diego, California, for the plaintiff-appellee.

Before: PREGERSON, BOOCHEVER, and HAWKINS, Circuit Judges.

## I.

PREGERSON, Circuit Judge:

Jose Lombera–Camorlinga, a Mexican national, was arrested at the Calexico, California, Port of Entry on November 17, 1997, when customs inspectors searched his vehicle and found approximately 39.3 kilograms of marijuana hidden in a compartment under the floorboard. Before questioning him, the customs officers advised him of his *Miranda* rights. The officers did not, however, inform him that he had the right to contact the Mexican Consulate. Lombera–Camorlinga made incriminating statements in response to the officers' questions.

He was indicted on December 23, 1997, on two counts: (1) importation of marijuana in violation of 21 U.S.C. §§ 952 and 960; and (2) possession of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1). He moved the District Court to suppress his statements to the officers on the ground that they were taken in violation of Article 36 of the Vienna Convention on Consular Relations. The District Court denied the motion, and the appellant entered a conditional guilty plea to the importation charge. Lombera–Camorlinga appeals his conviction to this court.

## II.

■ Article 36(1)(b) of the Vienna Convention on Consular Relations provides:

[I]f he so requests, the competent authorities of the receiving State shall, without delay, inform the consular post of the sending State if, within its consular district, a national of that State is arrested or committed to prison or to custody pending trial or is detained in any other manner. Any communication addressed to the consular post by the person arrested, in prison, custody, or detention shall also be forwarded by the said authorities without delay. *The said authorities shall inform the person concerned without delay of his rights under this sub-paragraph.*

Vienna Convention on Consular Relations, April 24, 1963, [1970] 21 U.S.T. 77, T.I.A.S. No. 6820 (emphasis added) [hereinafter "Article 36" and "the Convention"]. As a treaty made under the authority of the United States, the Vienna Convention is the supreme law of the land. U.S. Const. art. VI, cl. 2.

It is undisputed that the customs officers who took the appellant's statements did not inform him of the rights established by Article 36. Therefore, the customs officers violated the Vienna Convention.

## III.

■ The government, however, reasons that the right violated by the customs officers belonged not to the appellant, as an individually affected foreign national, but rather to the Mexican Consulate. Based on this reasoning, the government contends that the appellant lacks standing to complain of the violation. We disagree.

While one of the purposes of Article 36 is to "facilitat[e] the exercise of consular functions relating to nationals of the sending State," Convention, art. 36(1), foreign nationals are more than incidental beneficiaries of Article 36(1)(b). The treaty language itself clearly states that the rights enumerated in sub-paragraph 36(1)(b) belong to the foreign national: "The said authorities shall inform *the person concerned* without delay of *his rights under this sub-paragraph.*" Convention, Article 36(1)(b) (emphasis added). It strains the English language to interpret "his rights" in this context to refer to the Consulate's rights. We held in *United States v. Rangel–Gonzales,* 617 F.2d 529, 532 (9th Cir.

1980), that "[t]he right established by the regulation [intended to ensure compliance with the Convention] and in this case by treaty is a personal one."

Moreover, the language of the provision is not precatory, but rather mandatory and unequivocal. *See INS v. Cardoza–Fonseca*, 480 U.S. 421, 441, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987) (contrasting mandatory obligations and "precatory" provisions under the United Nations Protocol Relating to the Status of Refugees). Accordingly, individual foreign nationals have rights under Article 36(1)(b) of the Vienna Convention.

The government further contends that, even if the Vienna Convention establishes individual rights, individuals do not have standing to enforce those rights. This contention lacks merit.

It has long been recognized that, where treaty provisions establish individual rights, these rights must be enforced by the courts of the United States at the behest of the individual. *See United States v. Rauscher*, 119 U.S. 407, 418–19, 7 S.Ct. 234, 30 L.Ed. 425 (1886) (citing *Head Money Cases*, 112 U.S. 580, 5 S.Ct. 247, 28 L.Ed. 798 (1884)); *see also United States v. Alvarez–Machain*, 504 U.S. 655, 659–60, 112 S.Ct. 2188, 119 L.Ed.2d 441 (1992) (recognizing the continuing authority of *Rauscher*). Because Article 36(1)(b) establishes individual rights, these rights must be enforced by our courts.[1]

### IV.

The final question is the appropriate remedy for an Article 36 violation. In considering this matter, we look first to the language of the Article. *See Alvarez–Machain*, 504 U.S. at 663, 112 S.Ct. 2188 ("In construing a treaty ... we first look to its terms to determine

its meaning."). Article 36(2) provides: "The rights referred to in paragraph 1 of this article shall be exercised in conformity with the laws and regulations of the receiving State, subject to the proviso, however, that the said laws and regulations must not nullify these rights." Convention, art. 36(2).

Despite the importance of the Vienna Convention, and its status as the supreme law of the land, law enforcement officials continue to overlook the rights Article 36(1)(b) establishes for foreign nationals who are "arrested, in prison, custody, or detention."[2] Convention, art. 36(1)(b). By failing to complain of these violations at trial, however, most individual defendants have "failed to exercise [their] rights under the Vienna Convention in conformity with the laws of the United States." *Breard v. Greene*, 523 U.S. 371, 118 S.Ct. 1352, 1355, 140 L.Ed.2d 529 (1998). As a result, violations of the Convention have often gone judicially unredressed. *See, e.g., id.* (holding that the Convention claim was procedurally defaulted); *Villafuerte v. Stewart*, 142 F.3d 1124, 1125 (9th Cir.1998) (same); *LaGrand v. Stewart*, 133 F.3d 1253, 1261 (9th Cir.1998) (same).

By raising his claim in a pretrial suppression motion, the appellant exercised his rights under the Convention in conformity with our laws. *See Breard v. Pruett*, 134 F.3d 615, 622 (4th Cir.1998) (Butzner, J., concurring) ("The provisions of the Conventions should be implemented before trial when they can be appropriately addressed."). Our laws, in turn, must not nullify his rights as established by Article 36. Irrespective of the requirements of Article 36(2), "[t]he importance of the Vienna Convention cannot be overstated. It should be honored by all nations that have signed the treaty and all

---

1. The government contends that individuals have no "right of action" under the Vienna Convention. Because the appellant invokes the Convention as a defense, we need not address the question whether individuals have an affirmative right of action under Article 36. *See Breard v. Greene*, 523 U.S. 371, 118 S.Ct. 1352, 1355, 1356, 140 L.Ed.2d 529 (1998) (addressing individual petitioner's procedural default of his Vienna Convention defense separately from foreign country's lack of private right of action under the Convention).

2. *See, e.g., Breard*, 118 S.Ct. at 1354 (discussing an Order from the International Court of Justice ("ICJ") requesting the United States to stay foreign national's execution pending resolution of Republic of Paraguay's claim that the United States violated the Convention); *Villafuerte v. Stewart*, 142 F.3d 1124, 1125 (9th Cir.1998) ("[i]t is undisputed that Arizona officials did not notify Villafuerte of his right to consult with the officials of the Honduran consulate ..."); *LaGrand v. Stewart*, 133 F.3d 1253, 1261 (9th Cir.1998) ("It is undisputed that the State of Arizona did not notify the LaGrands of their rights under the Treaty.").

states of this nation." *Breard v. Pruett,* 134 F.3d at 622 (J. Butzner, concurring).

There is scant authority for the remedy in criminal cases involving violation of Article 36 of the Convention. We have addressed this issue, however, in cases involving prosecution for illegal entry following deportation. In *United States v. Calderon–Medina,* 591 F.2d 529, 531 (9th Cir.1979), we held that where an alien had not been advised of his right to consult consular official in the underlying deportation, his later prosecution for illegal entry following deportation would be precluded if "the violation prejudiced interests of the alien which were protected by the regulation [8 C.F.R. § 242.2(e) (1978), requiring the INS to inform the alien of his right to consult with consular authorities]." As we explained in *Calderon–Medina,* Section 242 was intended to ensure compliance with the Vienna Convention and to protect some interests of the alien. *Id.* at 531 n. 6. Therefore, we remanded for the district court to consider whether these interests had been prejudiced.

In *Rangel–Gonzales,* 617 F.2d at 531, we applied the standards laid down in *Calderon–Medina.* We held that because the defendant carried his burden to show some likelihood that had the same regulation "been followed his defense and the conduct of the hearing would have been materially affected," the indictment for illegal entry should have been dismissed. We concluded that the violation prejudiced the interests of the defendant as protected by the INS regulation and, by association, the Vienna Convention.

■ We see no reason why the same standard should not apply in this case. Upon a showing that the Vienna Convention was violated by a failure to inform the alien of his right to contact his consulate, the defendant in a criminal proceeding has the initial burden of producing evidence showing prejudice

from the violation of the Convention. If the defendant meets that burden, it is up to the government to rebut the showing of prejudice.[3]

 In this case, Lombera–Camorlinga filed a motion to suppress his post-arrest statements because he was not first advised of his rights under the Vienna Convention. The district court denied his motion to suppress without making a determination of prejudice. We therefore reverse and remand to the district court for a determination whether in making his post-arrest statements, Lombera–Camorlinga was prejudiced by the violation of the Vienna Convention.

REVERSED and REMANDED.

---

3. At the present time, we believe the most reasonable approach is to place the burden on the defendant to show he was prejudiced as a result of the violation. One commentator has concluded that "a foreign national is inherently prejudiced when detained or in custody in a foreign criminal justice system. A consul's assistance can place him on par with a non-foreigner." Mark J. Kadish, *Article 26 of the Vienna Convention on Consular Relations: A Search for the*

*Right to Consul,* 18 Mich. J. Int'l L. 565, 606 (1997). We believe, however, that unless after time it proves ineffective in inducing compliance with the Vienna Convention, the determination of prejudice is a question of fact dependent on the circumstances of the individual case.