STATE of Delaware,

v.

David REYES, Defendant.

I.D. No. 9805001002.

Superior Court of Delaware,
New Castle County.

Submitted: July 6, 1999.
Decided: July 22, 1999.

Paul R. Wallace, Deputy Attorney General, Department of Justice, Wilmington, DE.

Diane Clark Street, Brian J. Bartley, Public Defender's Office, Wilmington, DE, for Defendant.

ALFORD, Judge.

## I. FACTS

On May 3, 1998, Alejandro Villalobos was fatally shot and killed with a handgun. The prime suspect in the shooting death is David Reyes ("Defendant"), a Guatemalan national. The State alleges that on August 17, 1998, one day after he was apprehended in Port Chester, New York, Defendant admitted to shooting Villalobos, but claimed that the shooting was in self-defense. Defendant supposedly made this

statement while being interviewed by a Spanish-speaking police officer.

The officer advised Defendant of his *Miranda* rights.[1] He did not, however, inform Defendant that he was entitled to contact the Guatemalan Consulate. Defendant was subsequently indicted by a Grand Jury of this Court and extradited to Delaware pursuant to a Governor's warrant. He faces charges of First Degree Murder and Possession of a Firearm During the Commission of a Felony.

Defendant now moves to suppress the alleged statements he made on grounds that he was denied his consular notification rights in violation of international law. He also alleges that the statements he provided to the police were not made knowingly, voluntarily, and intelligently.

## II. DISCUSSION

■ It is undisputed that the police officers who took Defendant's statement did not inform Defendant, a Guatemalan national,[2] of the rights established by the Vienna Convention on Consular Rights.

The State's submissions to this Court admit that the Vienna Convention was violated.[3] Defendant seeks to have this Court suppress his August 17, 1998, and subsequent statements because of this admitted violation. This is an issue of first impression in Delaware.

In 1963, ninety-two nations codified existing international law on consular relations by adopting the multilateral treaty of the Vienna Convention on Consular Relations.[4] Given the diversity of economic and political systems represented at the Conference, the Convention represents the broadest agreement possible on the topic of consular relations.[5] The Convention was adopted by the United Nations in April, 1963.[6] The United States, one of the original signers of the Vienna Consular Convention, ratified the Treaty in 1969.[7]

Article 36 governs the communication and contact between a consul and nationals of his country. It requires authorities of the receiving State[8] to inform detained or arrested foreign nations of their right to contact their national consul.[9] Article

---

1. See *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. The Court has reviewed an April 16, 1999 U.S. Department of Justice, Immigration and Naturalization Service Notice to Appear form sent to Defendant under § 240 of the Immigration and Nationality Act. The Court finds that Defendant has sufficiently shown that he is not a citizen or national of the United States, and is a native and a citizen of Guatemala.

3. The State concedes that "[a]t no time during the course of these events was Reyes notified of his right to contact the Guatemalan Consul under the Vienna Convention on Consular Relations." See State's Let. of June 23, 1999, at 2.

4. See Mark J. Kadish, *Article 36 of the Vienna Convention on Consular Relations: A Search for the Right to Counsel*, 18 MICH. J. INT'L L. 565, 568 (1997) (citing The United Nations Conference on Consular Relations, 1963 U.N.Y.B. 510, U.N. Sales No. 64.I.1).

5. See William J. Aceves, *Vienna Convention on Consular Relations: A Study of Rights, Wrongs, and Remedies*, 31 VAND. J. TRANSNAT'L

L. 257 (1998). See also Kadish, *supra* note 4, at 568.

6. See Kadish, *supra* note 4, at 568 (citing Final Act of the United Nations Conference on Consular Relations, Apr. 24, 1963, art. 14, 596 U.N.T.S. 458, 464.)

7. See Aceves, *supra* note 5, at 267–268; Kadish, *supra* note 4, at 568. The United States Senate approved the Vienna Convention on October 22, 1969, and was formally ratified by President Richard Nixon on November 12, 1969. The ratification was deposited on November 24, 1969, and was entered into force for the United States on December 24, 1969. Aceves, *supra* note 5, at 269.

8. A "receiving State" is a State in which the foreign national has been arrested or detained. See Kadish, *supra* note 4, at 569–570 (citing 2 United Nations Conference on Consular Relations: Official Records, at 3, U.N. Doc. A/Conf.25/6, U.N. Sales. No. 63.X.2 (1963)).

9. See Kadish, supra note 4, at 570 (citing United Nations Conference on Consular Relations, *supra* note 3, at 511). While the Con-

36(1)(b) of the Vienna Convention on Consular Relations provides:

> [I]f he so requests, the competent authorities of the receiving State shall, without delay, inform the consular post of the sending State if, within its consular district, a national of that State is arrested or committed to prison or to custody pending trial or is detained in any other manner. Any communication addressed to the consular post of the person arrested, in prison, custody, or detention shall also be forwarded by the said authorities without delay. The said authorities shall inform the person concerned without delay of his rights under this sub-paragraph.[10]

Article 36(c)(1) grants consular officers the right to visit, converse, and correspond with a national who is in detention and to arrange for his legal representation. It provides:

> [C]onsular officers shall have the right to visit a national of the sending State who is in prison, custody or detention, to converse and correspond with him and to arrange for his legal representation.

They shall also have the right to visit any national of the sending State who is in prison, custody or detention in their district in pursuance of a judgment. Nevertheless, consular officers shall refrain from taking action on behalf of a national who is in prison, custody or detention if he expressly opposes such action.[11]

Finally, Article 36(2) provides that the laws and regulations of the receiving State must allow full effect to be given to the rights enumerated above:

> The rights referred to in paragraph 1 of this Article shall be exercised in conformity with the laws and regulations of the receiving State, subject to the proviso, however, that the said laws and regulations must enable full effect to be given to the purposes for which the rights accorded under this Article are intended.[12]

As a treaty made under the authority of the United States, many courts in the past two decades have recognized the Vienna Convention to be the supreme law of the land,[13] and most courts facing the question

vention does not define these terms, the U.S. Department of State's Foreign Affairs Manual defines "arrest" to mean "to take or keep a person in custody by authority of law"; "custody" to mean "judicial or penal guarding or safekeeping of a person in accordance with law or local requirement"; and "detention" to mean "holding a person in custody or confinement before or without charging the person with a violation or crime." *Id.* (citing U.S. Dep't of State, 7 FOREIGN AFFAIRS MANUAL 403 (1984)).

**10.** *See* Vienna Convention on Consular Relations, Apr. 24, 1963, [1970] 21 U.S.T. 77, T.I.A.S. No. 6820 [hereinafter "Article 36" and "the Convention"].

**11.** *Id.* art. 36, para. 1(c).

**12.** *Id.* art. 36, para. 2. The obligation to give full effect to the requirements of Article 36 is also found in Article 14 of the Convention which provides that the receiving State shall "ensure that the necessary measures are taken to enable the head of a consular post to carry out the duties of his office to and to have the benefit of the provisions of the pres-

ent convention." *See* Vienna Convention, *supra* note 10, art. 14.

**13.** *See, e.g., Breard v. Greene,* 523 U.S. 371, 118 S.Ct. 1352, 140 L.Ed.2d 529 (Apr. 14, 1998) ("The Vienna Convention … has continuously been in effect since 1969."); *United States v. Superville,* 40 F .Supp.2d 672 (D.Vi. 1999); *U.S. v. Lombera–Camorlinga,* 170 F.3d 1241 (9 th Cir.1999) (citing U.S. CONST. ART. VI, cl.2.) *See generally Whitney v. Robertson,* 124 U.S. 190 190, 194, 8 S.Ct. 456, 31 L.Ed. 386 (1888) ("By the Constitution a treaty is placed on the same footing, and made of like obligation, with an act of legislation."). The Supremacy Clause of the U.S. Constitution provides:

> The Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme law of the Land; and the Judges in every State shall be bound thereby; any Thing in the Constitution of Laws of any State to the Contrary notwithstanding. U.S. CONST. ART. VI, cl.2.

of whether detained aliens have standing to raise claims under the Convention have conceded that they do.[14] In its recent decision in *United States v. Superville*,[15] the District Court of the Virgin Islands, Division of St. Thomas and St. John, made the following observations:

> Under the fundamental principle of *pacta sunt servanda*, which states that "treaties must be observed," the United States has consistently invoked the Vienna Convention to protest other nations' failures to provide Americans with access to consular officials. This basic principle also requires, of course, that the United States respect its obligations under the treaty. Reciprocity is the foundation of international law.[16]

Discussing the United States' invocation of the Vienna Convention to protest other nations' failure to provide American citizens abroad access to consular officials, the *Superville* court cited the United States' condemnation of the Islamic Republic of Iran for preventing American diplomats from communicating with American hostages, in violation of the Convention.[17] The *Superville* court also noted that in 1986, the United States explicitly relied on the Convention to visit an American national imprisoned in Nicaragua.[18]

There is limited authority for the remedy in criminal cases involving violation of the Vienna Convention on consular notification. The first cases dealing with the Convention's consular notification requirements reviewed deportation hearings conducted by the U.S. Immigration and Naturalization Service (INS). The two companion cases that first considered and discussed in depth the Convention's consular notification rights are *United States v. Calderon–Medina*[19] and *United States v. Rangel-Gonzales*.[20]

In *United States v. Calderon–Medina*, the defendants were indicted for illegal reentry following deportation, a violation of 8

---

14. *See, e.g., United States v. Superville*, 40 F.Supp.2d 672 (D.Vi.1999); *United States v. Esparza–Ponce*, 7 F.Supp.2d 1084, 1096 (S.D.Ca.1998); *Villafuerte v. Stewart*, 142 F.3d 1124, 1125–26 (9th Cir.1998); *Breard v. Netherland*, 949 F.Supp. 1255, 1263 (E.D.Va. 1996), *aff'd* 134 F.3d 615, 619–20 (4th Cir. 1997). *But cf. Republic of Paraguay v. Allen*, 134 F.3d 622 (4th Cir.1998). In *Republic of Paraguay*, Paraguay and its ambassador and consul general to the United States brought an action for declaratory and injunctive relief against the Governor of Virginia and other state officials, alleging that officials violated the Vienna Convention by failing to inform Paraguayan national convicted of capital offense of his rights under the Convention and to notify Paraguayan consulate of national's arrest, conviction, and sentence. *Id.* at 624– 625. The district court dismissed the case for lack of subject matter jurisdiction. Affirming the district court's decision, the Fourth Circuit held that: (1) the treaty violation was not an ongoing violation of federal treaty law, as required to bring action within the *Ex parte Young* exception to the Eleventh Amendment immunity protecting state officials, *Id.* at 628, and, (2) the relief sought was not prospective, as required to bring action within the *Ex parte Young* exception. *Id.* at 628–629. The Fourth Circuit did not, however, affirm the district court's statement, in *dicta*, that the Convention is not "self-executing" or enforceable by individuals because it confers no "rights of action on private individuals." *Republic of Paraguay v. Allen*, 949 F.Supp. 1269 (E.D.Va.1996). Although the Fourth Circuit dismissed the case because it found that there was no ongoing Vienna Convention violation, the court, however, commented that it was disenchanted "with the Commonwealth's conceded past violation of Paraguay's treaty rights ... [t]here are disturbing implications in that conduct for larger interests of the United States and its citizens." *Republic of Paraguay v. Allen*, 134 F.3d at 629.

15. 40 F.Supp.2d 672 (D.Vi.1999).

16. *Id.* at 676 (citing *Breard v. Pruett*, 134 F.3d 615, 622 (4th Cir.1998) (Butzner, J. concurring)). (Internal citations omitted).

17. *Superville*, 40 F.Supp.2d at 676(n.2) (citing Aceves, *supra* note 5, at 271).

18. *Superville*, 40 F.Supp.2d at 676(n.2) (citing Andrew Selsky, *Ortega: American Prisoner will be Tried*, AP, Oct. 11, 1986).

19. 591 F.2d 529 (9th Cir.1979).

20. 617 F.2d 529 (9th Cir.1980).

U.S.C. § 1326.[21] The defendants challenged the lawfulness of their prior deportation on the basis that the INS violated its own regulation by not advising them of their right to contact their national consul. After concluding that the lawfulness of a deportation may be collaterally attacked in a subsequent criminal proceeding, the court held that a "violation of a regulation renders a deportation unlawful only if the violation prejudiced interests of the alien which were protected by the regulation."[22]

A two-part test was thus established for determining whether a violation of an INS regulation made a deportation unlawful: (1) did the regulation serve to benefit the alien? and, (2) did the violation of that regulation prejudice the alien?[23] To determine the applicability of the first prong of the test, the Ninth Circuit analyzed Article 36.

The Court found that the INS regulation in question benefitted individual aliens, and concluded that the protection of foreign nationals' interests is a corollary to consular efficiency since consular functions include protecting the interests of their nationals.[24] The Court found, however, that the district court had not made the finding of prejudice required under the second prong of the test and remanded the case for such determination.[25]

While *Calderon–Medina* established that Article 36 inherently granted a personal "benefit" to individuals,[26] it has been

suggested that the companion case, *United States v. Rangel–Gonzales*,[27] more fully elaborated on the prejudice requirement.[28] In *Rangel–Gonzales*, the Court of Appeals for the Ninth Circuit Court reiterated that the burden of proof was on the defendant to show prejudice, which must "relate to the interests protected by the regulation".[29] In the context of the regulation in question (the illegal re-entry statute), the court found that the protected interest "related to obtaining assistance in preparing a defense to the deportation."[30] The *Rangel–Gonzales* court therefore established that to show prejudice, preparation of that defense must have been materially affected. The court found the requisite prejudice in the defendant's case.[31]

The recent United States Supreme Court's opinion in *Breard v. Greene*[32] addressed the applicability of a Vienna Convention claim in a state court. In *Breard v. Greene*, the defendant, a Paraguayan citizen took the witness stand in his own defense, and during his testimony, confessed to killing his victim, but explained that he had only done so because of a Satanic curse placed on him by his father-in-law.[33] The defendant was convicted of murder and rape and was sentenced to death.

Following the affirmance of conviction for rape and capital murder, and denial of a state *habeas corpus* petition, the defendant filed a motion for *habeas corpus* in federal district court. In that motion, the

21. *Calderon–Medina*, 591 F.2d at 530.

22. *Calderon–Medina*, 591 F.2d at 531. (Emphasis added).

23. *Id.*

24. *Id.* at 532 n. 6.

25. *Id.* at 532.

26. *See also United States v. Rangel–Gonzales*, 617 F.2d 529, 532 (9th Cir.1980) (stating that "[t]he right established by the regulation and in this case by treaty is a personal one").

27. 617 F.2d 529, 532 (9th Cir.1980).

28. *See, e.g., United States v. Cerda–Pena*, 799 F.2d 1374, 1381–82 (9th Cir.1986) (Nelson J., dissenting) (discussing relationship between *Calderon–Medina* and *Rangel–Gonzales*, and concluding that *Rangel–Gonzales* alone fully developed the prejudice standard).

29. *Rangel–Gonzales*, 617 F.2d at 530.

30. *Id.*

31. *Id.* at 531.

32. 523 U.S. 371, 118 S.Ct. 1352, 140 L.Ed.2d 529 (Apr. 14, 1998).

33. *Id.* at 1353.

defendant argued for the first time that his conviction and sentence should be overturned because his Vienna Convention rights were allegedly violated. Specifically, he argued that Article 36 was violated when the arresting authorities failed to inform him that, as a foreign national, he had the right to contact the Paraguayan Consulate.[34]

The Supreme Court upheld the lower courts' dismissal of the petition for lack of subject matter jurisdiction and held, in relevant part, that by not asserting his Vienna Convention claim in state court, defendant procedurally defaulted on the Article 36 claim.[35] The Court noted that while it will "give respectful consideration" to the interpretation of the Vienna Convention, absent a clear and express to the contrary, the procedural rules of the forum State govern the implementation of the treaty in that State.[36] The Court stated that the procedural rule in the United States requires that assertions of error in criminal proceedings must first be raised in state court in order to form the basis for relief in habeas,[37] and that claims not so raised are considered defaulted. In so holding, the Court held that "[b]y not asserting his Vienna Convention claim in state court, Breard failed to exercise his rights under the Vienna Convention in conformity with the laws of the United States and the Commonwealth of Virginia."[38]

The Court went on to hold that even if the defendant's Vienna Convention claim were properly raised and proven, "it is extremely doubtful that the violation should result in the overturning of a final judgment of conviction without some showing that the violation had an effect on the trial."[39] The Court found the defendant's asserted prejudice-that had the dictates of Article 36 been followed he would have accepted the State's offer to forgo the death penalty in return for a plea of guilty to be highly speculative.[40]

Defendant Reyes relies on *United States v. Lombera–Camorlinga*[41] for the proposition that a violation of consular notification rights are grounds for suppressing incriminating statements made by foreign nationals while in police or government custody. In *Lombera–Camorlinga*, a Mexican national ("Lombera"), was arrested at the Calexico, California, entry port when, after searching his car, customs inspectors found concealed marijuana. The officers advised him of his *Miranda* rights but did not inform him that he had the right to contact the Mexican Consulate. Lombera made incriminating statements in response to the officers' questions. After he was indicted on drug charges, Lombera moved the district court to suppress his statement to the officers on the ground that they were taken in violation of Article 36.

After the district court denied the motion and Lombera entered a conditional guilty plea, he appealed his conviction to the Court of Appeals for the Ninth Circuit. The Ninth Circuit reversed and remanded the case to the trial court to determine whether the Vienna Convention violation prejudiced Lombera.[42]

The *Lombera–Camorlinga* court disagreed with the government's position that

**34.** *Id.* at 1354.

**35.** *Id.* at 1355.

**36.** *Id.* at 1354 (citing *Sun Oil Co. v. Wortman,* 486 U.S. 717, 723, 108 S.Ct. 2117, 100 L.Ed.2d 743 (1988); *Volkswagenwerk Aktiengesellschaft v. Schlunk,* 486 U.S. 694, 700, 108 S.Ct. 2104, 100 L.Ed.2d 722 (1988)).

**37.** *Id.* at 1355 (citing *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)).

**38.** *Id.* (Emphasis added).

**39.** *Id.* (citing *Arizona v. Fulminante,* 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)).

**40.** *Id.* at 1355–56.

**41.** 170 F.3d 1241 (9 th Cir.1999).

**42.** *Id.* at 1244.

Lombera lacked standing to assert a Vienna Convention violation. The court stated that "[w]hile one of the purposes of Article 36 is to 'facilitat[e] the exercise of consular functions relating to nationals of the sending State, ... foreign nationals are more than incidental beneficiaries of Article 36(1)(b).'"[43] The court also stated that "the language of the provision is not precatory, but rather mandatory and unequivocal"[44] and that individual foreign nationals have rights under Article 36.[45] Citing well-established jurisprudential precedent, the Ninth Circuit concluded that where treaty provisions establish individual rights, these rights must be enforced by the courts of the United States at the behest of the individual.[46]

More importantly to this case, however, the *Lombera-Camorlinga* court stated that "[b]y raising his claim in a pretrial suppression motion, the appellant exercised his rights under the Convention in conformity with our laws."[47] The court went on to state that "[t]he importance of the Vienna Convention cannot be overstated. It should be honored by all nations that have signed the treaty and states of this nation."[48]

■ The State argues that in order to show prejudice, Defendant "would have to argue that he would have contacted the Guatemalan consul had he known of his right to do so" and that Defendant has "the burden of showing how contacting the Guatemalan Consulate would have changed his position by presenting evidence that the consul's (sic) would have changed his decision to speak to the police."[49]

The Court finds the State's assertions meritless. It suffices to state that the issue in this case is not whether Defendant would have asserted his Article 36 consular notification rights, but whether or not, following his arrest, Defendant was informed of his consular notification rights. The language of the treaty provides that a foreign national, after being informed of his consular notification rights, has the option to not contact his national consulate if he so chooses.[50] The State concedes that Defendant was never informed of his rights after his arrest and alleges that he made incriminating statements during his interrogation.[51] The Court need not conduct a hearing to determine that the August 17, 1998 confession was prejudicial to Defendant. This Court is not holding that a violation of the Vienna Convention is prejudice *per se*. It is merely stating that in this case, the Court has made a specific finding of prejudice.

The State also argues that even if Defendant were notified of his Article 36 rights, "why would Reyes' (sic) possibly contact officials of the oppressive 'police nation' of Guatemala for advice on how to deal with the American police and justice system?"[52] The State's position misinterprets the meaning and intent of the Vienna Convention on Consular Rights. As com-

---

43. *Id.* at 1242.

44. *Id.* at 1243 (citing *INS v. Cardoza–Fonseca*, 480 U.S. 421, 441, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987)).

45. *Id.*

46. *Id.* (citing *United States v. Rauscher*, 119 U.S. 407, 418–19, 7 S.Ct. 234, 30 L.Ed. 425 (1886); *United States v. Alvarez–Machain*, 504 U.S. 655, 659–60, 112 S.Ct. 2188, 119 L.Ed.2d 441 (1992) (recognizing the continuing authority of *Rauscher*)).

47. *Id.* at 1244. (Emphasis added) (citing *Breard v. Pruett*, 134 F.3d 615, 622 (4th Cir.

1998) (Butzner, J. concurring) (stating, that "[t]he provisions of the Conventions should be implemented before trial when they can be appropriately addressed.")).

48. *Id.* (citing *Breard v. Pruett*, 134 F.3d at 622 (Butzner, J. concurring)).

49. *See* State's Let. of June 23, 1999, at 6.

50. *See* Vienna Convention, *supra* note 10, art. 38, para. 1(c).

51. *See* State's Let. of June 23, 1999, at 2.

52. *See* State's Let. of June 23, 1999, at 6–7.

mented by several scholars and conceded by many courts, when a foreign national is arrested, especially one who is unable to speak the language of the receiving State, it is likely that he will be unfamiliar with the receiving State's criminal justice system, and may be unable to defend himself, not just due to ignorance, but also due to possible discrimination based on his national origin.[53] To inform and to educate state and local enforcement agencies regarding the Convention's consular notification requirements, the State Department sends booklets to the governor and attorney general of each of the fifty states, and to the mayors of cities with populations exceeding 100,000 people.[54]

Turning to the State's rhetorical question as to why Defendant would call the "police nation," the State raises an interesting question, however. It is one that this Court is unable to address. To comment on Guatemala City's system of government would be intruding into the realm of foreign policy, an arena left to the Legislative and Executive branches of our government.

■■■■■ It is well-established in Delaware and in our nation that a suspect may be interrogated only if he makes a voluntary, knowing, and intelligent waiver of his rights.[55] The burden is on the State to prove by a preponderance of the evidence

that the suspect waived his rights.[56] It is undisputed that the police officers who took Defendant's statement did not inform Defendant of the rights established by the Vienna Convention on Consular Rights. By raising his suppression motion at the pretrial stage, Defendant has properly exercised his rights under the Vienna Convention in conformity with the laws of the United States.[57]

### III. CONCLUSION

The text of the Vienna Convention, the intention of the drafters, and the prevailing view among this nation's courts lead this Court to conclude that Defendant's motion to suppress should be granted for the following reasons: (1) the Vienna Convention is the law of the land under Article IV, Section 2 of the United States Constitution; (2) the police conduct in this case violated Article 36 of the Convention; (3) Defendant, a Guatemalan citizen, has asserted a Vienna Convention violation in a timely manner; (4) Defendant has shown adequate prejudice to exist; and, (5) a violation Article 36 is ground for suppressing incriminating statements made by foreign nationals while in police or government custody.

For the foregoing reasons, Defendant's Motion to Suppress statement obtained in violation of Article 36(b)(1) of the Vienna Convention on Consular Relations is **GRANTED.** Defendant's motion to sup-

**53.** *See* Kadish, *supra* note 10, at 605 (referring to *Graham v. Richardson*, 403 U.S. 365, 377, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971) (holding that aliens constitute a specific minority deserving enhanced judicial protection and making alienage a suspect classification under the Equal Protection Clause of the United States Constitution)).

**54.** *See* Aceves, *supra* note 5, at 314–315 (referring to the *U.S. Dep't of State, Instructions for Federal, State and Other Local Law Enforcement and Other Officials Regarding Foreign Nationals in the United States and the Rights of Consular Officials to Assist Them* (1998)).

**55.** *See, e.g., Bryan v. State*, Del.Supr., 571 A.2d 170, 175 (1990); *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**56.** See *De Jesus v. State*, Del.Super., 655 A.2d 1180 (1995); *State v. Moore*, Del.Super., C.A. No. 9610008625, Silverman, J., 1998 WL 438792 (May 29, 1998) (Mem.Op.).

**57.** *See Breard v. Pruett*, 134 F.3d 615, 622 (4th Cir.1998). *See also Breard v. Greene*, 523 U.S. 371, 118 S.Ct. 1352, 1355, 140 L.Ed.2d 529 (1998); *United States v. Lombera–Camorlinga*, 170 F.3d 1241 (9th Cir.1999). *Compare with Superville*, 40 F.Supp.2d 672.

press statements under the Fourth, Fifth, Sixth Amendments to the United States Constitution, as well as his arguments alleging that his statements were not the product of a free and unrestrained choice under *Culombe v. Connecticut* [58] is **MOOT**.

**IT IS SO ORDERED.**

---

**58.** 367 U.S. 568, 602, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961).