UNITED STATES of America, Plaintiff–Appellee,

v.

Cecilio ESPARZA–PONCE, Defendant–Appellant.

No. 98–50606.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 5, 1999.

Decided Oct. 19, 1999.

---

Steven F. Hubachek, Benjamin L. Coleman, Federal Defenders of San Diego, Inc., San Diego, California, for the appellant.

John H. Gomez and Jennifer E. Braccia, Assistant United States Attorneys, San Diego, California, for the appellee.

Before: HALL and T.G. NELSON, Circuit Judges, and WARE,[1] District Judge.

T.G. NELSON, Circuit Judge:

Cecilio Esparza–Ponce appeals his conviction and sentence for violation of 8 U.S.C. § 1326 (unlawful reentry by a deported alien) and 18 U.S.C. § 911 (false claim of U.S. citizenship). He raises three principal issues: denial of due process in his deportation proceedings, the claimed overbreadth of 18 U.S.C. § 911 and violation of the Vienna Convention on Consular Relations.[2] We have jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

## FACTS AND PROCEDURAL HISTORY

On October 10, 1997, Esparza–Ponce attempted to enter the United States claiming to be a U.S. citizen born in San Diego, when in fact, he is a native and citizen of Mexico. An inspection at the port of entry revealed that Esparza–Ponce had been deported and removed to Mexico earlier on that same day as an alien who had been convicted of two crimes involving moral turpitude. Following his arrest, Esparza–

Ponce was interrogated, but he was not informed of his right to contact the Mexican Consulate pursuant to the Vienna Convention on Consular Relations. During the interrogation, Esparza–Ponce made incriminating statements.

A complaint was filed on October 12, 1997, charging Esparza–Ponce with attempting to enter the United States after deportation in violation of 8 U.S.C. § 1326. A superceding indictment added the charge of falsely claiming U.S. citizenship in violation of 18 U.S.C. § 911.

During pretrial proceedings, Esparza–Ponce filed several motions, including a motion to dismiss the indictment based on a collateral attack on the underlying deportation and a motion to suppress incriminating post-arrest statements. The district court denied those motions in a published decision. *See United States v. Esparza–Ponce,* 7 F.Supp.2d 1084 (S.D.Cal.1998).

After the jury returned guilty verdicts on both counts of the superseding indictment, Esparza–Ponce moved to set aside the verdict as to count two, claiming that 18 U.S.C. § 911 is unconstitutionally overbroad. The district court denied this motion.

## ANALYSIS

### A. *The Deportation Proceeding* [3]

■ We review the district court's denial of Esparza–Ponce's collateral attack of his original deportation procedures *de novo. See United States v. Jimenez–Marmolejo,* 104 F.3d 1083, 1085 (9th Cir.1996). To succeed in his collateral challenge, Esparza–Ponce must show he was prejudiced by the procedural inadequacies he asserts. *See United States v. Proa–Tovar,* 975 F.2d 592, 595 (en banc) (9th Cir.1992) ("A defen-

---

1. Honorable James Ware, United States District Court Judge for the Northern District of California, sitting by designation.

2. The other issues raised by Esparza–Ponce are addressed in an unpublished memorandum filed with this opinion.

3. The Government argues that Esparza–Ponce has waived his right to challenge the deportation order. We assume, for purposes of our analysis, that the Government has not met its burden of showing a valid waiver by Esparza–Ponce.

dant who seeks to exclude evidence of a deportation order in a prosecution under 8 U.S.C. § 1326 must do more than demonstrate deprivation of the right to a direct appeal from that order. The defendant also bears the burden of proving prejudice.") To meet his burden of showing prejudice, Esparza–Ponce must demonstrate that he had plausible grounds for relief from deportation. *See Jimenez–Marmolejo,* 104 F.3d at 1085.

■ Esparza–Ponce asserts that prejudice is shown because he was denied the opportunity to prove that his petty theft conviction would not qualify as a crime involving moral turpitude. This circuit has not specifically addressed the substance of Esparza–Ponce's argument. We have, however, stated that "[t]heft is a crime of moral turpitude," *United States v. Villa–Fabela,* 882 F.2d 434, 440 (9th Cir.1989), *overruled on other grounds, Proa–Tovar,* 975 F.2d at 595; that "[l]awful admission ... is not available to aliens who have committed a crime of moral turpitude, which includes theft," *United States v. Lopez–Vasquez,* 1 F.3d 751, 755 n. 8 (9th Cir.1993); and that "[c]rimes in which fraud is an ingredient have always been regarded as involving moral turpitude," *Burr v. INS,* 350 F.2d 87, 91 (9th Cir. 1965).[4]

In addition to these statements in our own cases, every other circuit that has addressed the question in the context of the immigration laws has concluded that petty theft is a crime involving moral turpitude for purposes of those laws. *See, e.g., Chiaramonte v. INS,* 626 F.2d 1093, 1097 (2d Cir.1980) ("It has been long acknowledged by this Court and every other circuit that has addressed the issue that crimes of theft, however they may be technically translated into domestic penal provisions, are presumed to involve moral turpitude."); *Soetarto v. INS,* 516 F.2d 778, 780 (7th Cir.1975) ("Theft has always been held to involve moral turpitude, regardless of the sentence imposed or the amount stolen."); *Ablett v. Brownell,* 240 F.2d 625, 630 (D.C.Cir.1957) ("[P]etty theft [is] a crime which does involve moral turpitude within the meaning of the immigration laws.").

■ Further, contrary to Esparza–Ponce's statement that the Board of Immigration Appeals ("BIA") has not addressed the question, the BIA has several times held that petty larceny is a crime involving moral turpitude.[5] *See, e.g., Morales–Alvarado,* 655 F.2d at 174 ("The [BIA] held that both convictions [of indecent liberties and petty theft] were crimes of moral turpitude."); *In re De La Nues,* 18 I. & N. Dec. 140, 145, 1981 WL 158837 (BIA 1981) ("Burglary and theft or larceny, whether grand or petty, are crimes involving moral turpitude."); *In re Scarpulla,* 15 I. & N. Dec. 139, 140–41, 1974 WL 30020 (BIA 1974) ("It is well settled that theft or larceny, whether grand or petty, has always been held to involve moral turpitude.").

Finally, Esparza–Ponce makes a cursory argument that the cases relied on by the district court-*Soetarto* and *Ablett*-are old and do not involve California's petty theft statute. Esparza–Ponce has not, however, cited any cases departing from *Soetarto* and *Ablett.* Moreover, the current version

---

4. In *Morales–Alvarado v. INS,* 655 F.2d 172 (9th Cir.1981), although the BIA held that indecent liberties and petty theft were both crimes involving moral turpitude, *see id.* at 174, on appeal we declined to address whether the crime of petty theft was itself a crime of moral turpitude: "Regardless whether petty theft is a crime of moral turpitude, it is clear that his conviction for indecent liberties, and his sentence of 6 months in prison and 3 years' probation, would render him statutorily ineligible for [voluntary] departure." *Id.* at 174 n. 1.

5. We review *de novo* the BIA's legal determination that a crime involves moral turpitude under the immigration laws. *See Okoro v. INS,* 125 F.3d 920, 926 (5th Cir.1997). In conducting this *de novo* review, however, we show considerable deference to the BIA's interpretation. *See id.; see also Mendoza v. INS,* 16 F.3d 335, 337 (9th Cir.1994) (according deference to the BIA's definition of "entry" under the immigration laws).

of California's petty theft statute simply defines grand theft as being theft of property in excess of a certain value or·of certain kinds of property. *See* Cal.Penal Code § 487. But theft of property not involving those amounts or types of property is not separately defined. Since the elements of petty theft are the same as theft in general, the element of moral turpitude would continue to be present whether the theft be petty or grand.

Esparza–Ponce has failed to show that, on direct appeal of the deportation order, he could have presented plausible grounds for relief from deportation. He has thus failed to demonstrate that he was prejudiced by any procedural inadequacies in his deportation proceedings and his collateral attack of his deportation order therefore fails. *See Jimenez–Marmolejo,* 104 F.3d at 1085.

B. *False Claim of Citizenship*

■ Esparza–Ponce falsely claimed to be a U.S. citizen when apprehended. Esparza–Ponce argues here, as he did in the district court, that 18 U.S.C. § 911,[6] which he was convicted of violating by making a false claim of U.S. citizenship, is overly broad. His argument is summed up in a statement in his brief: The statute "does not require that the false claim be made in a federal immigration matter, a federal matter, or even any other governmental matter." He points to several hypothetical examples of § 911's broad reach potentially chilling speech at political rallies, grocery stores, country clubs and cocktail parties.

■ While a defendant generally may not challenge a statute on the grounds that it "may conceivably be applied unconstitutionally to others, in other situations not

before the court," *United States v. Cheely,* 36 F.3d ·1439, 1443 n. 10·.(9th Cir.1994) (citations omitted), in certain circumstances a defendant may bring an overbreadth challenge based on First Amendment grounds. The Supreme Court has instructed that the

> overbreadth doctrine ... is, manifestly, strong medicine. It has been employed by the Court sparingly and only as a last resort. Facial overbreadth has *not been invoked when a limiting construction has been or could be placed on the challenged statute.*

*Broadrick v. Oklahoma,* 413 U.S. 601, 613, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973) (emphasis added).

This court has already placed a limiting construction on the predecessor of § 911, 8 U.S.C. § 746(a)(18).[7] In *Smiley v. United States,* 181 F.2d 505 (9th Cir.1950), we stated:

> Congress used broad language in making misrepresentations of citizenship an offense. Taken in a literal sense the language of the statute is sufficiently broad to make it a crime for anyone to knowingly and falsely represent himself to be a citizen of the United States without regard to whether or not the person to whom the false statement is made had good reason to inquire into the nationality status of the party. The courts have placed the latter interpretation on the language and we agree such an interpretation is reasonable....

*Id.* at 507–08. This limiting construction is consistent with the Second Circuit's decision in *United States v. Achtner,* 144 F.2d ·49 (2d Cir.1944):

> [R]epresentation of citizenship must still be made to a person having some right

---

6. Section 911 provides:
   Whoever falsely and willfully represents himself to be a citizen of the United States shall be fined under this title or imprisoned not more than three years, or both.
   18  U.S.C. § 911.

7. Section 746(a)(18) made it a felony for a person

> [k]nowingly to falsely represent himself to be a citizen of the United States without having been naturalized or admitted to citizenship, or without otherwise being a citizen of the United States.

8  U.S.C. § 746(a)(18) (1940).

to inquire or adequate reason for ascertaining a defendant's citizenship; it is not to be assumed that so severe a penalty is intended for words spoken as a mere boast or jest or to stop the prying of some busybody.

*Id.* at 52.

Esparza–Ponce argues that this limiting construction on the statute is not applicable to § 911 because these cases involved the predecessor statute, 8 U.S.C. § 746(a)(18). As the Fifth Circuit has recognized however, "[s]ection 746(a)(18) has been replaced by 18 U.S.C. § 911.... The revision notes to § 911 states that the only significant change made to § 746(a)(18) was substituting 'willfully' for 'knowingly' and that the remaining changes were 'minor' and 'unnecessary words were omitted.'" *United States v. Harrell,* 894 F.2d 120, 126 n. 2 (5th Cir. 1990).

Since the modifications to § 911's predecessor were minor, the limiting construction previously placed on the predecessor statute is equally applicable to § 911. Thus, Esparza–Ponce cannot invoke an overbreath challenge since a "limiting construction has been ... placed on the challenged statute." *Broadrick,* 413 U.S. at 613, 93 S.Ct. 2908.

Esparza–Ponce relies on language in *Reno v. ACLU,* 521 U.S. 844, 117 S.Ct. 2329, 138 L.Ed.2d 874 (1997), to the effect that, in considering whether a statute withstands facial challenge, a court may impose a limiting construction on the statute only if the statute is "readily susceptible" to that construction. *See id.* at 884, 117 S.Ct. 2329. The problem with Esparza–Ponce's reliance on *Reno* is that, unlike the situation in that case where no limiting construction had ever been applied to the statute, in the present case the limiting construction was in existence at the time that Esparza–Ponce made his statement to the authorities. Further, the issue in *Reno* was the vagueness of the words employed in the statute itself. In the present case, by contrast, Esparza–Ponce is not arguing that the words of the statute are themselves vague. Rather, Esparza–Ponce is arguing that the potential reach of the statute into any other imaginable situation makes it overbroad. But the limiting construction that we have placed on the language of this statute specifically addresses this element of the overbreadth argument. As construed, the statute is not overbroad, and Esparza–Ponce's challenge therefore fails.

## C. *The Vienna Convention*

The Vienna Convention on Consular Relations, 21 U.S.T. 77, so far as pertinent here, provides in Article 36:

[I]f he so requests, the competent authorities of the receiving State shall, without delay, inform the consular post of the sending State if, within its consular district, a national of that State is arrested or committed to prison or to custody pending trial or is detained in any other manner. Any communication addressed to the consular post by the person arrested, in prison, custody, or detention shall also be forwarded by the said authorities without delay. *The said authorities shall inform the person concerned without delay of his rights under this sub-paragraph.*

Vienna Convention on Consular Relations, Apr. 24, 1963, art. 36, 21 U.S.T. 77 (emphasis added). It is undisputed that Esparza–Ponce was not informed of his rights under the Convention when he was apprehended. His motion to suppress his incriminating statements based on the Convention was denied by the district court.

■■■ After briefing was completed in this case, the case of *United States v. Lombera–Camorlinga,* 170 F.3d 1241 (9th Cir.1999), was decided. That case resolved some issues that the parties have raised here. It is now established, pursuant to *Lombera–Camorlinga,* that Esparza–Ponce has standing to assert his rights under the Convention, *see id.* at 1243, but that, to obtain relief for the violation of those rights, Esparza–Ponce must show

that denial of those rights resulted in prejudice to him. *See id.* at 1244.

In *United States v. Rangel–Gonzales,* 617 F.2d 529, 533 (9th Cir.1980), we held that an alien establishes prejudice where he shows that "he did not know of his right to consult with consular officials, that he would have availed himself of that right had he known of it, and that there was a likelihood that the contact would have resulted in assistance to him...." The district court applied that test to Esparza–Ponce's case and held that Esparza–Ponce

> has not demonstrated-nor even alleged-that he would have contacted the consul if he had been informed of his right to do so. Of course, [Esparza–Ponce] is now fully aware of his right but apparently still has not contacted the consul. Moreover, [Esparza–Ponce] has not established, nor even alleged, that the consul would have done anything to help him and, if the consul had, it would have been anything that his attorney has not already done. *See Faulder [v. Johnson,* 81 F.3d 515, 520 (5th Cir.1996) ] (finding no prejudice because "the evidence that would have been obtained by the [foreign] authorities is merely the same as or cumulative of evidence defense counsel had or could have obtained").

*Esparza–Ponce,* 7 F.Supp.2d at 1097.

We agree. Esparza–Ponce has not shown prejudice; in fact, he has not even argued here that he was prejudiced. His claims under the Convention entitle him to no relief.

AFFIRMED.