# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-1615

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Fausto Morales Santos, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: October 18, 2000

Filed: December 27, 2000

_____

Before WOLLMAN, Chief Judge, LAY, and BEAM, Circuit Judges.

_____

WOLLMAN, Chief Judge.

Fausto Morales Santos, a Mexican national, was sentenced to thirty-three months in prison and two years of supervised release after his conviction by a jury on five counts stemming from his production and sale of false identification documents in violation of 18 U.S.C. § 1028.[1] He appeals both his conviction and his sentence.

_____

[1]The Honorable Paul A. Magnuson, Chief Judge, United States District Court for the District of Minnesota.

# I.

Santos was arrested on April 15, 1999, when police executed a search warrant for an apartment in Minneapolis, Minnesota, where Santos and another man were actively engaged in the production of a variety of false identification documents, including drivers' licenses, birth certificates, social security cards, and I-551 resident alien cards. Along with false documents in varying states of completion, the apartment held a panoply of equipment and materials used in the production of identification documents. Particularly noteworthy were an operating typewriter containing a freshly minted false social security card, detailed ledgers recording document sale transactions, a false social security card recovered from Santos's person, a number of business cards bearing only Santos's name and pager number, and four completed false I-551 cards bearing Santos's inked fingerprints.

Santos was read his <u>Miranda</u> rights in Spanish by a Spanish-speaking police officer and confessed to making false identification cards, a statement he essentially repeated the next morning. He was not, however, informed of his right as a Mexican national to have the Mexican consulate notified pursuant to the Vienna Convention on Consular Relations until April 19, 1999, four days after his arrest. At that time, he declined consular notification.

The district court denied Santos's pre-trial motion to suppress his conviction as having been obtained in violation of the Vienna Convention. Before the jury, Santos argued that he was a victim of circumstances who happened to be in an apartment where illegal acts were taking place but who was not participating in them. The district court declined to grant a sentence reduction for acceptance of responsibility.

## II.

Article 36 of the Vienna Convention on Consular Relations requires authorities to inform detained or arrested foreign nationals that they may have their consulates notified of their status.

> [I]f [the detainee] so requests, the competent authorities of the receiving State shall, without delay, inform the consular post of the sending State if, within its consular district, a national of that State is arrested or committed to prison or to custody pending trial or is detained in any other manner.  Any communication addressed to the consular post by the person arrested, in prison, custody or detention shall also be forwarded by the said authorities without delay.  The said authorities shall inform the person concerned without delay of his rights under this sub-paragraph
> . . .

Vienna Convention on Consular Relations, Art. 36(b), April 24, 1963, 21 U.S.T. 77, 596 U.N.T.S. 261.  That the terms of the treaty were violated by the four-day notification delay is not in dispute; the only issue before us is whether the admission over Santos's objection of his pre-notification confessions invalidates his conviction.[2]

Courts have been unable to reach a consensus, and often even a decision, on the issues of whether Article 36 creates an individually enforceable right to consular notification, compare United States v. Lombera-Camorlinga, 206 F.3d 882, 883 (9th Cir. 2000) (en banc) (noting recognition of an individually enforceable right created by Article 36) and United States v. Briscoe, 69 F. Supp. 2d 738, 746-47 (D. Vi. 1999) (holding that Article 36 creates an individually enforceable right) with United States v.

---

[2]We note that, because this is a direct appeal, Santos's does not suffer from the procedural defects that have plagued similar claims.  Cf. Breard v. Greene, 523 U.S. 371, 376 (1998) (per curiam); Flores v. Johnson, 210 F.3d 456, 458 (5th Cir. 2000) (per curiam).

-3-

Li, 206 F. 3d 56, 62-65 (1st Cir. 2000) (holding that individual defendants are not entitled to raise violations of Article 36 as a defense to criminal prosecution), whether a defendant must show prejudice to vindicate that right if it does exist, see United States v. Cordoba-Mosquera, 212 F.3d 1194, 1196 (11th Cir. 2000) (per curiam) (holding no remedy exists for an Article 36 violation absent a showing of prejudice); United States v. Pagan, 196 F.3d 884, 890 (7th Cir. 2000) (upholding denial of mistrial based on Article 36 violation where the defendant did not show how notice of Article 36 rights would have influenced evidence put to jury); Faulder v. Johnson, 81 F.3d 515, 520 (5th Cir. 1996) (holding Article 36 violations did not merit reversal where the defendant's attorney had access to all information available to his consulate), and what, if any, remedy may be available for such a violation, see Breard v. Greene, 523 U.S. at 378-79 (per curiam) (suggesting that, in the absence of a showing of an effect on the trial, violation of the Vienna Convention will not warrant overturning a final judgment); United States v. Page, Nos. 99-5361, 99-5449, 99-5451, 99-5456, 2000 WL 1682523 at *3 (6th Cir. Nov. 9, 2000) (" . . . although some judicial remedies may exist, there is no right in a criminal prosecution to have evidence excluded or an indictment dismissed due to a violation of Article 36"); State v. Reyes, 740 A.2d 7, 13-14 (Del. Super. Ct. 1999) (granting a motion to suppress evidence because failure to advise the defendant of his Article 36 rights precluded a knowing and intelligent waiver of Miranda rights).

This case does not require us to resolve these questions.  Even assuming the resolution of each of the foregoing questions in Santos's favor, he would not be entitled to reversal because the admission of his confessions, in light of the overwhelming evidence against him, was at most harmless error.

We begin by noting that Santos is in a materially different position from a defendant who is not informed of the requirement of consular notification until after trial. Cf. United States v. Ademaj, 170 F.3d 58, 66-67 (1st Cir. 1998). Santos received notification four days after his arrest and five months before he was tried, giving him

adequate time to seek consular contact in his plea negotiations, in his defense preparation, and during the trial itself. He declined consular notification. Therefore, his argument that the four-day delay was a "structural defect" analogous to a denial of right to counsel, e.g., Gideon v. Wainwright, 372 U.S. 335 (1963), is inapposite. Even if the Vienna Convention creates an enforceable right to consular participation in his trial, five months was more than enough time for Santos to exercise it, and his own failure to do so cannot fairly be charged to the government's four-day delay.

Thus, the issue before us is whether the admission of Santos's two pre-notification confessions requires reversal of his conviction. For purposes of this case, we assume without deciding that Santos had an individually enforceable right under Article 36 to be informed of his right to consular notification that attached upon arrest in much the same manner as did his right to receive Miranda warnings, that the government's violation of his Article 36 rights rendered his confession involuntary, and that the appropriate remedy for the violation is suppression of the confession.

Nonetheless, we uphold the conviction because, in light of the overwhelming evidence against Santos, we conclude that any error by the district court in admitting the confessions was harmless. In Fulminante v. Arizona, 499 U.S. 279, 310 (1991), the Supreme Court held that the erroneous admission of an involuntary confession does not require reversal if, on review of the evidence as a whole, the error was harmless beyond a reasonable doubt. Applying that decision, we have held that, although a confession is a particularly potent piece of evidence against a defendant, its erroneous introduction may still be harmless where the other evidence against him was so weighty it assured beyond a reasonable doubt that the jury would have returned a conviction even absent the confession. United States v. Jones, 16 F.3d 275, 279 (8th Cir. 1994) (improper admission of defendant's confession harmless where other evidence included "virtual 'smoking gun' evidence"); see also United States v. Robinson, 20 F.3d 320, 323 (8th Cir. 1994).

The government in this case did not limit itself to a smoking gun--it introduced an entire arsenal, as witnessed by the array of evidence described above. Santos offered no coherent, credible explanation for this evidence. Accordingly, we are convinced that any error in admitting the statements was harmless beyond a reasonable doubt, and we affirm the conviction.

## III.

Santos also contends that he was entitled to a reduction in his sentence for acceptance of responsibility. "Whether a defendant has accepted responsibility is a factual question which depends largely on credibility assessments by the sentencing court." United States v. Yell, 18 F.3d 581, 583 (8th Cir. 1994). The determination of the district court will be reversed only if it is so clearly erroneous as to be without foundation. United States v. Ervasti, 201 F.3d 1029, 1043 (8th Cir. 2000). Santos argues that he put the government to its proof at trial only to vindicate his Article 36 rights. Not only did Santos contest the fact of his guilt and challenge evidence at trial, however, he apparently made contradictory statements concerning his responsibility both before and after his conviction and continued to insist that his involvement in the document falsification scheme was principally attributable to an unidentifiable man named Wayne. In these circumstances, it was not clear error for the district court to refuse to grant him an acceptance of responsibility reduction.

The judgment of the district court is affirmed.

BEAM, Circuit Judge, concurring.

I join the court's opinion without reservation. I write only to note that if it had been necessary for the court to decide the issue, I would have adopted the reasoning of those courts that have found that there is no individually enforceable right under

Article 36 to be informed of a right to consular notification that attaches upon arrest in a manner similar to the right to receive a <u>Miranda</u> warning.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.