**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Glenn D. YANCOSKIE, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 20, 2006.

Filed Dec. 14, 2006.

---

Stanton D. Levenson, Pittsburgh, for appellant.

Christopher M. Capozzi, Office of the Attorney General, Butler, for Commonwealth, appellee.

BEFORE: STEVENS, TODD, and McCAFFERY, JJ.

OPINION BY TODD, J.:

¶ 1 Glenn D. Yancoskie appeals the judgment of sentence[1] imposed by the Beaver County Court of Common Pleas after he was convicted of possession of a controlled substance (marijuana);[2] posses-

---

1. Appellant purports to appeal from the January 3, 2006 order denying his post-sentence motion. An appeal from an order denying a post-trial motion is procedurally improper because a direct appeal in a criminal proceeding lies from the judgment of sentence. *See Commonwealth v. Schauffler*, 397 Pa.Super. 310, 313, 580 A.2d 314, 316 (1990). The appeal in this case falls within no recognized exception to the general rule. *See id.* Therefore, this appeal properly lies from the judgment of sentence and not from any post-trial order. Accordingly, we have corrected the caption.

2. 35 P.S. § 780–113(a)(16).

sion with intent to deliver;[3] unlawful manufacture of a controlled substance;[4] and possession of drug paraphernalia.[5] We affirm.

¶ 2 The charges against Appellant stem from an investigation which began on April 8, 2004, when Deputy Attorney General Brad Hellein, Agent Daniel Opsatnik, and Agent James Farmer met with George Bills, Appellant's wife's attorney, at the request of Attorney Bills. During the meeting, Attorney Bills advised the agents that his client, Deborah Yancoskie (hereinafter "Wife"), intended to leave her husband, and that she wanted to notify law enforcement authorities of Appellant's illegal marijuana manufacturing operation. Attorney Bills expressed concern that Wife could be prosecuted based on her involvement with Appellant and his operation, and requested that the agents interview Wife. On April 12, 2004, Agents Opsatnik and Farmer interviewed Wife and learned that Appellant was scheduled to be out of town on a fishing trip the following week.

¶ 3 On April 20, 2004, Agents Opsatnik, Farmer, and Fred Neal went to the home of Appellant and Wife at approximately 11:20 a.m. Wife permitted the agents to enter the house, but when asked for her consent to search the house, indicated that she would need to speak with her attorney. The agents stepped outside to allow Wife to contact her attorney. After speaking with Attorney Bills, Wife invited the agents back inside and told them that Attorney Bills had advised her not to consent to the search. Agents Opsatnik and Farmer then left the residence to obtain a search warrant, while Agent Neal remained with Wife. At approximately 1:15 p.m., before obtaining a search warrant, Agent Opsatnik was directed to return to

the house because Wife had given written consent for a search of the house. A search was conducted, during which agents seized, *inter alia*, marijuana, drug paraphernalia, personal and financial records, a motorcycle, a pistol, and more than $90,000.

¶ 4 Prior to trial, Appellant filed a motion to suppress. Three hearings were conducted, and at one of the hearings Appellant made an oral motion for defense witness immunity for Wife after she invoked her Fifth Amendment right against self-incrimination. The motions were denied by order dated July 8, 2005. Following his conviction at a bench trial, Appellant was sentenced to an aggregate term of 3 to 5 years in prison. Appellant's subsequent post-trial motions were denied, and this timely appeal followed, wherein Appellant asks this Court to consider the following issues:

1. Was the warrantless search of Appellant's residence unreasonable?

2. Did the court below err in refusing Appellant's motion for defense witness immunity?

(Appellant's Brief at 3.)

¶ 5 It is well-settled that

[w]hen we review the ruling of a suppression court, we must determine whether its factual findings are supported by the record. Where the defendant challenges an adverse ruling of the suppression court, we will consider only the evidence for the prosecution and whatever evidence for the defense which is uncontradicted on the record as a whole; if there is support on the record, we are bound by the suppression court, and we may reverse that court only if

3.  35 P.S. § 780–113(a)(30).

4.  35 P.S. § 780–113(a)(30).

5.  35 P.S. § 780–113(a)(32).

the legal conclusions drawn from these facts are erroneous.

*Commonwealth v. Slonaker*, 795 A.2d 397, 400 (Pa.Super.2002) (citation omitted).

¶ 6 Appellant first argues that the warrantless search of his house was unreasonable because (1) he was "intentionally deprived of his Fourth Amendment right to refuse consent to the warrantless search"; (2) Wife's consent to the search was "solely motivated by her hostility toward [Appellant]"; and (3) the agents could have obtained a warrant prior to the search. (Appellant's Brief at 10.)

¶ 7 In *Georgia v. Randolph*, 547 U.S. 103, 126 S.Ct. 1515, 164 L.Ed.2d 208 (2006), the Supreme Court of the United States explained that "[t]he Fourth Amendment [of the United States Constitution] recognizes a valid warrantless entry and search of premises when police obtain the voluntary consent of an occupant who shares, or is reasonably believed to share, authority over the area in common with a co-occupant who later objects to the use of evidence so obtained." *Id.* at 1518 (citations omitted). In the instant case, it is undisputed that Wife possessed common authority over the house she shared with Appellant. Appellant argues, however, that Wife's consent was invalid under *Randolph* because the agents "purposely waited until Appellant was out of town to go to his residence." (Appellant's Brief at 10.)

¶ 8 In *Randolph*, the Supreme Court considered whether consent given by an occupant to search premises shared with a co-occupant is valid where the co-occupant is present and states a refusal to permit the search. The Court determined that "a warrantless search of a shared dwelling for evidence *over the express refusal of consent by a physically present resident* cannot be justified as reasonable as to him on the basis of consent given to the police by

another resident." *Randolph*, 126 S.Ct. at 1526 (emphasis added). The Court noted, however, the fact that its holding will not inure to the benefit of co-occupants who have a self-interest in objecting to a search, but, because they may be a short distance away, are "not invited to take part in the threshold colloquy," *id.* at 1527, citing, for example, the defendants in *United States v. Matlock*, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974), and *Illinois v. Rodriguez*, 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990).

¶ 9 In *Matlock*, the defendant was in custody in a police car outside of a house in which he lived with his girlfriend and others when his girlfriend gave police her consent for a search of the bedroom she shared with the defendant. In *Rodriguez*, the defendant was asleep in another room of the apartment when his girlfriend, whom the police believed to have authority, gave consent for a police search of the apartment. In both cases, the searches were upheld as reasonable under the Fourth Amendment. Acknowledging that it was "drawing a fine line," the Court in *Randolph* explained:

> This is the line we draw, and we think the formalism is justified. *So long as there is no evidence that the police have removed the potentially objecting tenant from the entrance for the sake of avoiding a possible objection,* there is practical value in the simple clarity of complementary rules, one recognizing the cotenant's permission when there is no fellow occupant on hand, the other according dispositive weight to the fellow occupant's contrary indication when he expresses it.

126 S.Ct. at 1527 (emphasis added).

■ ¶ 10 Appellant relies on the above-italicized language for his argument that the agents' search of his residence was

unreasonable under *Randolph:* he contends that by purposely timing their search to coincide with Appellant's out-of-town fishing trip, the police removed Appellant "from the entrance for the sake of avoiding a possible objection." (Appellant's Brief at 13.) We cannot agree. Initially, we note that the language relied on by Appellant does not represent the entirety of the Supreme Court's analysis in *Randolph.* The Court further explained:

> For the very reason that *Rodriguez* held it would be unjustifiably impractical to require the police to take affirmative steps to confirm the actual authority of a consenting individual whose authority was apparent, we think it would needlessly limit the capacity of the police to respond to ostensibly legitimate opportunities in the field if we were to hold that reasonableness required the police to take affirmative steps to find a potentially objecting co-tenant before acting on the permission they had already received. There is no ready reason to believe that efforts to invite a refusal would make a difference in many cases, whereas every co-tenant consent case would turn into a test about the adequacy of the police's efforts to consult with a potential objector. Better to accept the formalism of distinguishing *Matlock* from this case than to impose a requirement, time-consuming in the field and in the courtroom, with no apparent systemic justification. The pragmatic decision to accept the simplicity of this line is, moreover, supported by the substantial number of instances in which suspects who are asked for permission to search actually consent, albeit imprudently, a fact that undercuts any argument that the police should try to locate a suspected inhabitant because his denial of consent would be a foregone conclusion.

126 S.Ct. at 1527–28 (footnote omitted). Thus, the Court recognized that there would be opportunities for police to obtain consent from one individual, while a co-tenant likely would refuse such consent, but declined to limit such opportunities by requiring the police to locate the co-tenant.

¶ 11 Although the record supports Appellant's assertion that the agents timed their request for Wife's consent to search the house with a time when they knew Appellant was to be out of town, we cannot conclude, as Appellant suggests, that such a strategy amounts to a police removal of Appellant from the entrance to his home under *Randolph.* Indeed, there is no evidence that Appellant's fishing trip was anything other than of his own volition. We hold that by voluntarily absenting himself from the house he shared with Wife, the contents of which he obviously was aware, Appellant assumed the risk that Wife would allow someone else, namely, the agents, to conduct a search. *See Frazier v. Cupp,* 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969) (in allowing his cousin to use a duffel bag, which contained appellant's clothing, and in leaving the bag in his cousin's house, appellant assumed the risk that his cousin would allow someone else to look inside). Accordingly, we reject Appellant's argument that the warrantless search of the house was unreasonable.

¶ 12 With regard to Appellant's argument that Wife's consent was invalid because it "was solely motivated by her hostility toward [Appellant]," (Appellant's Brief at 14), we note that Appellant cites no case law to support his argument. Accordingly, we deem it to have been waived. *See* Pa.R.A.P. 2119; *Collins v. Cooper,* 746 A.2d 615, 619 (Pa.Super.2000) (holding claim of error waived when "appellant has failed to cite any authority in support of a contention"). For the same reason, we hold that Appellant has waived his bald

**116**

allegation that "the agents could have sought a search warrant." (Appellant's Brief at 15.)

¶ 13 In his second issue, Appellant argues that the trial court erred in denying his motion for immunity for Wife. In so arguing, Appellant first contends that Wife's testimony was necessary to determine whether her consent was truly voluntary in view of her inconsistent conduct, namely, the fact that Wife approached the police with information about Appellant, cooperated fully with them, but initially refused to consent to a search when the agents arrived at the house on April 20, 2004. He further argues that her testimony was necessary in order to determine whether Wife's testimony was "so motivated by hostility toward [Appellant] and so obviously contrary to his constitutional rights that as a matter of due process fairness, he should not be bound by it." (Appellant's Brief at 16.) We find no error in the trial court's refusal to grant Wife immunity at the request of Appellant.

¶ 14 With regard to witness immunity, 42 Pa.C.S.A. § 5947(b) provides:

> **(b) Request and issuance.**—The Attorney General or a district attorney may request an immunity order from any judge of a designated court, and that judge shall issue such an order, when in the judgment of the Attorney General or district attorney:

> (1) the testimony or other information from a witness may be necessary to the public interest; and

> (2) a witness has refused or is likely to refuse to testify or provide other information on the basis of his privilege against self-incrimination.

42 Pa.C.S.A. § 5947(b).

 ¶ 15 As we noted in *Commonwealth v. Hall,* 867 A.2d 619 (Pa.Super.2005), *appeal denied,* 586 Pa. 756, 895 A.2d 549 (Mar. 7, 2006), "this section makes clear [that] 'courts have no power to grant immunity except on request of the prosecutor.'" *Id.* at 634 (citation omitted). Furthermore, "[e]ven if [the defendant's] counsel did request immunity [for a witness] from the trial judge, the judge would have been able to do nothing. As is stated in § 5947, it is the prosecutor's decision that commands." *Id.* Accordingly, the trial court did not err in refusing to grant Wife immunity at the request of Appellant, as the court was powerless to do so.[6]

¶ 16 Finding no merit to Appellant's arguments, we affirm his judgment of sentence.

¶ 17 Judgment of sentence **AFFIRMED.**

---

**6.** Appellant argues that this Court should follow the decision in *Virgin Islands v. Smith,* 615 F.2d 964 (3rd Cir.1980), which held that under the Due Process Clause of the United States Constitution, a trial court has the inherent power to order use immunity for defense witnesses even without a request from or the consent of the prosecutor, because "it has never been decided that Pennsylvania is not bound to follow *Smith.*" (Appellant's Brief at 20.) Even if we were to accept this argument, we find that the facts of this case do not meet the specific circumstances of *Smith,* namely, where the court finds "prosecutorial misconduct by the government's deliberate intent to disrupt the factfinding process" or, in the absence of such evidence, "when it is found that a potential defense witness can offer testimony which is clearly exculpatory and essential to the defense case and when the government has no strong interest in withholding use immunity." *Smith,* 615 F.2d at 974.