J-S22011-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| RAYMOND J. RIVERA | |
| Appellant | No. 948 WDA 2014 |

Appeal from the Judgment of Sentence November 14, 2013
In the Court of Common Pleas of Westmoreland County
Criminal Division at No(s): CP-65-CR-0004795-2011

BEFORE:  PANELLA, J., LAZARUS, J., and STRASSBURGER, J.[*]

MEMORANDUM BY PANELLA, J.                    **FILED JUNE 18, 2015**

Appellant, Raymond J. Rivera, appeals from the judgment of sentence entered November 14, 2013, following his conviction of murder of the first degree and related charges in the Court of Common Pleas of Westmoreland County.  We affirm.

The factual history of this matter is well known to the parties, so we rely upon the trial court's recitation of facts as set forth on pages 1-2 of the Rule 1925(a) opinion dated September 26, 2014.   Briefly, several eyewitnesses implicated Rivera in a shooting that resulted in the death of one victim and the injury of another.   Prior to trial, Rivera filed a notice pursuant to Pa.R.Crim.P. 568(A) of his intent to present expert psychiatric

_____

[*] Retired Senior Judge assigned to the Superior Court.

testimony regarding his state of mind at the time he committed the offenses. *See* Rule 568(A) Notice, 6/25/13. In support thereof, Rivera intended to introduce the psychiatric report of Dr. Robert Wettstein, M.D. The Commonwealth subsequently filed a motion *in limine* seeking to preclude the defense from presenting Dr. Wettstein's report, on the basis that the report contained insufficient information necessary to support a theory of imperfect self-defense. *See* Commonwealth's Motion *in Limine*, 6/26/13. Following a hearing, the trial court granted the Commonwealth's motion and precluded the admission of Dr. Wettstein's report. On August 16, 2013, a jury convicted Rivera of, *inter alia*, murder of the first degree. The trial court sentenced Rivera to life imprisonment on November 14, 2013.

In this timely appeal, Rivera argues that the trial court erred when it granted the Commonwealth's motion *in limine* to exclude the psychiatric report. Having determined that the Honorable Rita Donovan Hathaway's September 26, 2014 opinion ably and comprehensively disposes of Rivera's issue on appeal, with appropriate reference to the record and without legal error, we will affirm based on that opinion.

Judgment of sentence affirmed.

Judge Lazarus joins the memorandum.

Judge Strassburger files a dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/18/2015

## IN THE COURT OF COMMON PLEAS OF WESTMORELAND COUNTY, PENNSYLVANIA – CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA  )
                                                                   )
                            VS.                                )        No.    4795 C 2011
                                                                   )
RAYMOND J. RIVERA,                              )
                                                                   )
                                      Defendant.        )

## OPINION OF THE COURT ISSUED PURSUANT TO PA.R.A.P. RULE 1925

The Defendant, Raymond Rivera, was charged with Criminal Homicide and related offenses. He proceeded to a trial by jury, and was convicted on August 17, 2013 of all charges, including first degree murder. He was sentenced on November 14, 2013 to the mandatory sentence of life imprisonment. His post-sentence motions were denied by Opinion and Order of Court dated May 9, 2014.

## FACTUAL HISTORY

The evidence presented at trial established the following:

On the evening of October 20, 2011, John (a/k/a "New York Mike") Evans, Willie Young, and Laquan ("Zay") Cargill were at the Central City Plaza shopping center in the City of New Kensington. Evans intended to visit the Family Dollar store, which was one of the businesses in this "strip mall" type of plaza, to meet up with another friend called "Tree." When Evans entered the Family Dollar, Young and Cargill continued to the Shop-n-Save store to buy cigarettes. When Young and Cargill returned to the Family Dollar store, Young briefly entered the store and told Evans that they had returned, and then waited with Cargill outside the store. As Evans and "Tree" came out of the front doors of the Family Dollar Store, Young heard a woman,

1

later identified as April Cevario, begin screaming at Evans. Young noted that Evans did not react to the screaming woman. He saw the Defendant, Raymond Rivera, pull up in his car in the parking lot near the Family Dollar store. Young testified that Evans told Rivera, "Come get your girl," and Rivera lifted up his shirt, pulled out his gun, and shot Evans two or three times. Evans fell immediately to the ground. Rivera then stepped over Evans, pointed the gun at Young, and stated, "You're next." Rivera then fired the gun at Young, who turned and ran into the Family Dollar store. Young suffered gunshot wounds to his leg and his arm. (TT 160-173).[1] Evans died at the scene. Rivera then fled the scene and threw away the gun, but turned himself into police the following day.

John Evans had sustained two gunshot wounds: one to his left thigh and one to his neck. Dr. Cyril Wecht testified that the gunshot wound in the neck had perforated the jugular vein, which resulted in "a significant amount of external damage." (TT 334). In his opinion, the cause of Evans' death was "primarily the gunshot wound of the neck, producing the injuries that I have described, and resulting in a large amount of bleeding, referred to hear [sic] as exsanguination, which simply means bleeding out." (TT 337).

The events of the evening of October 20, 2011 in the Central City Plaza were witnessed by multiple persons and also caught on video tape by surveillance cameras that had been installed by various businesses in that shopping center. Rivera did not deny that he fired the shots that killed John Evans and wounded Willie Young. He claimed, however, that he believed that John Evans was about to shoot him and that his actions that night were in self-defense and, alternatively, in defense of his girlfriend, April Cevario.

---

[1] Numerals in parenthesis preceded by the letters "TT" refer to specific pages of the transcript of the trial in this matter, held on August 12-17, 2013 before this court, and made a part of the record in this case.

## ISSUE PRESENTED:

### DID THE TRIAL COURT ERR IN DISALLOWING THE PSYCHIATRIC TESTIMONY OF DR. ROBERT M. WETTSTEIN, M.D. THAT WAS PROPOSED BY THE DEFENSE?

Rivera's sole issue on appeal claims that the trial court erred by precluding the defense from calling Robert M. Wettstein, M.D. as an expert witness.

> It is firmly established that questions concerning the admissibility of evidence lie within the sound discretion of the trial court, and a reviewing court will not reverse the court's decision on such a question absent a clear abuse of discretion. *See Commonwealth v. Hunzer*, 868 A.2d 498, 510 (Pa.Super.2005). Abuse of discretion is not merely an error of judgment, but judgment that is manifestly unreasonable, such as where the law is not applied or when it is the result of partiality, prejudice, bias or ill will.

*Commonwealth v. Thompson*, 93 A.3d 478, 491 (Pa.Super. 2014).

Counsel for the defense filed a pre-trial Rule 568(A)[2] Notice on June 25, 2013, notifying the Commonwealth that the defendant intended to present expert testimony "regarding his state of mind at the time of the alleged offenses of which he is accused." The Notice specifically stated, "Defendant intends to present evidence at trial that he was suffering from the mental condition or infirmity of paranoid delusional disorder, as more fully described in the psychiatric report of Robert Wettstein, M.D." Dr. Wettstein's report was provided to the Commonwealth the day before the Notice was filed.

This Commonwealth thereafter filed a Motion in Limine seeking to preclude the defense from presenting Dr. Wettstein's testimony. Counsel for the defense had advised the

---

[2] Pa.R.Crim.P. Rule 568.

3

Commonwealth that Rivera had elected to pursue an imperfect self-defense theory in an effort to reduce the charge from murder to voluntary manslaughter.[3] The Commonwealth opposed the testimony, not by suggesting that expert psychiatric testimony was in itself inadmissible for this purpose, but rather because Dr. Wettstein's report contained insufficient information necessary to support that theory. The matter was argued before Judge Debra A. Pezze at a status conference held on June 28, 2013. Judge Pezze stated that she tended to agree with the Commonwealth; however, she afforded the defendant an opportunity to file a memorandum in support of the admission of Dr. Wettstein's testimony. Both counsel for Rivera and the Commonwealth filed written memoranda in support of their respective positions.

This matter was assigned to this court for trial in early July 2013, and argument on the Commonwealth's Motion in Limine was again heard before this court on July 10, 2013, the day before jury selection was to commence. After hearing argument and after considering the relevant case law and the written memoranda submitted by the parties, this court granted the Commonwealth's Motion in Limine on July 11, 2013.

Rivera contends that the trial court erred in granting the Commonwealth's Motion in Limine.

> Generally speaking, the admission of expert testimony is a matter left
> largely to the discretion of the trial court, and its rulings thereon will not

---

[3] 18 Pa.C.S.A. § 2503 provides, in pertinent part:

> (b) Unreasonable belief killing justifiable.--A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify the killing under Chapter 5 of this title (relating to general principles of justification), but his belief is unreasonable.

*18 Pa.C.S. §2503(b).*

4

be reversed absent an abuse of discretion. An expert's testimony is admissible when it is based on facts of record and will not cause confusion or prejudice.

*Commonwealth v. Huggins,* 68 A.3d 962, 966 (Pa.Super. 2013), *citing Commonwealth v. Watson,* 945 A.2d 174, 176 (Pa.Super. 2008) (internal citations and quotations omitted). With regard to the expert testimony at issue herein,

> Psychiatric testimony has long been held admissible to prove a defendant's subjective belief that he or she is in danger of imminent death or serious bodily injury. *Commonwealth v. McCloud,* 309 Pa.Super. 316, 455 A.2d 177, 179 (1983). *See also Commonwealth v. Stonehouse,* 521 Pa. 41, 555 A.2d 772 (1989) (plurality) (holding that trial counsel was ineffective for failing to present expert testimony on the battered woman syndrome as a defense to homicide charges); *Commonwealth v. Light,* 458 Pa. 328, 326 A.2d 288 (1974) (finding that psychiatric testimony was admissible to show whether defendant acted out of an honest, bona fide belief that he was in imminent danger at time he killed victim for purposes of establishing defense of self-defense); *Commonwealth v. Sheppard,* 436 Pa.Super. 584, 648 A.2d 563 (1994) (providing that testimony of paranoid personality disorder was admissible to show if defendant had a bona fide belief he was in danger in a homicide case, although denial of introduction of such testimony by trial court was not fatal, as paranoid personality disorder did not permit claim of imperfect self-defense to be used to reduce offense from murder to voluntary manslaughter); *Commonwealth v. Miller,* 430 Pa.Super. 297, 634 A.2d 614 (1993) (*en banc*) (holding that evidence of battered woman syndrome was admissible in homicide trial as probative evidence of defendant's state of mind as it relates to a theory of self-defense).

*Commonwealth v. Pitts,* 740 A.2d 726, 734 (Pa.Super. 1999). However, it is not the nature of the testimony that was challenged by the Commonwealth, but rather the quality of the "expert opinions" that were contained in Dr. Wettstein's report that formed the basis of the Commonwealth's Motion in Limine. The Commonwealth freely acknowledged that expert mental health testimony could be admissible to prove the *mens rea* of the defendant at the time of the killing. This court had an opportunity to review the contents of Dr. Wettstein's report in connection with the Commonwealth's Motion in Limine. The Commonwealth correctly noted

5

that Dr. Wettstein's report did not contain the information that the defense counsel said that they intended to elicit from Dr. Wettstein and present to the jury.

While it is not clear from the report when exactly Dr. Wettstein began his evaluation of Rivera, it is evident that he did not personally interview Rivera until May 3, 2013 and again on June 17, 2013. Dr. Wettstein was able to review certain records that were provided to him, including the Criminal Complaint and the Affidavit of Probable Cause, the police reports and witness interviews conducted by New Kensington Police Department, the preliminary hearing transcript, reports from the Pennsylvania Board of Probation and Parole, Federal Court records, Social Security disability information, reports from Rivera's prior mental health evaluation and treatment, and his school records. Dr. Wettstein also conducted collateral interviews with Rivera's mother and his girlfriend. It does not appear that Dr. Wettstein conducted any psychiatric testing of Rivera during this evaluation process.[4]

The report authored by Dr. Wettstein, dated June 23, 2013, indicates that Rivera had been diagnosed with delusional disorder, persecutory type by Marc F. Markiewicz, Ed.D. while he was seeing Rivera from October 2010 to August 2011, and that he was diagnosed by John Carosso, Psy.D. in January 2011 as having delusional disorder, persecutory type, possible alcohol abuse disorder and antisocial personality disorder. (Wettstein Report at pages 7-8). Interestingly, records from the Federal Bureau of Prisons in 2007 and 2008 indicate that Rivera was not in need of any psychological services. The report then provided the following diagnosis:

> According to the Diagnostic and Statistical Manual (DSM-IV), published by the American Psychiatric Association, the defendant can be diagnosed at the time of the alleged offense as follows:
>
> Axis I          Delusional disorder chronic, persecutory type.

---

[4] "No formal, written, cognitive testing was conducted, but [Rivera] was alert and oriented to person place age, date of birth, and situation." (Wettstein Report at page 12).

6

Axis II      Paranoid Personality disorder[5]

Axis III     No medical problems

Axis IV     Stressors included state parole; underemployment; financial; family.

(Wettstein Report at page 13).

While this diagnosis is fairly straightforward, Dr. Wettstein's conclusions are less than definitive. While Dr. Wettstein determined that at the time of the shooting, Rivera suffered from paranoid delusional disorder and paranoid personality type, he fails to indicate if or how these disorders affected Rivera's perceptions on that date. After considering little more than Rivera's self-serving statements obtained during two interviews, Dr. Wettstein provided the following "conclusions:"

> It is difficult to determine from the available data to what extent the defendant's fears regarding the homicide victim were reality based, the product of his general distrustfulness from his paranoid personality, or constituted a specific delusion that the victim was or had been harassing and menacing him either individually or through the victim's friends. At least in the defendant's mind, according to his report, the victim was someone that he feared over a period of time and not just at the time of the alleged offense.
>
> The defendant had an unstable relationship with Cevario, perhaps partly related to their respective infidelities, and his pervasive distrust and suspiciousness. There was some reported dishonesty in their relationship with each other.
>
> He reported that his ex-wife and her family participated in cult activities including ritualistic animal sacrifice. Of course, I have no independent knowledge of whether that actually occurred or whether that, too is a product of exaggeration, distortion, or actual delusion by the defendant.
>
> In the psychiatric interviews, the defendant stated that he saw a handgun in the hands of the homicide victim, Evans, but did not see a

---

[5] Dr. Wettstein noted: "[I]n the psychiatric interviews, the defendant presented as pervasively guarded, suspicious and distrustful. These traits are consistent with a diagnosis of a paranoid personality disorder rather than a specific delusional disorder persecutory type. While it is difficult to precisely delineate the diagnostic boundaries between his paranoid delusional disorder and his paranoid personality disorder, both are present now and were present at the time of the alleged offense." (Wettstein Report at pages 13-14).

handgun in the hands of Young though the later reached into his coat as if to grab one. I would not expect that the defendant's vision of the handgun would constitute a visual hallucination given the absence of a history of visual hallucinations or drug and alcohol use at the time of the offense. It is certainly conceivable, however, that the defendant misperceived or misinterpreted victim Young's movements to reach inside of his coat, or that victim Evans had grabbed some other object rather than a handgun as it was dark outside. As a psychiatrist, of course, I am not in the position of rendering independent judgments as to the reliability or accuracy of reported facts or observations by parties or witnesses to the matter. Beyond the question of whether the defendant, in fact, saw firearms in the hands of the victims, he reported that he was in fear of his life at the time of the alleged offense, and had been afraid of the victims in the past. He quoted others in the neighborhood as having cautioned him about his dealings with victim Evans.

(Wettstein Report at page 14). These "conclusions," as authored by Dr. Wettstein, do not offer any opinions, whether to a reasonable degree of psychiatric certainty or otherwise, other than to offer a diagnosis. Dr. Wettstein does not opine that Rivera's disorder had a specific effect on his state of mind at the time of the shooting, nor does he conclude that any mental disorder caused a bona fide belief that he was in danger, reasonable or otherwise.[6]

Psychiatric expert testimony is "generally admissible to support a theory of self-defense to show 'the subjective element of the defendant's state of mind at the time of the occurrence.'" *Commonwealth v. Ventura,* 975 A.2d 1128, 1140 (Pa.Super. 2009), *appeal denied;* 604 A.2d Pa. 706, 987 A.2d 161 (2009). Here, like in *Ventura,* Dr. Wettstein's report did not offer an opinion regarding Rivera's state of mind at the time that Evans was killed, or how that state of mind was affected by any mental disorder that Rivera might have had. At best, he noted that, "It is certainly conceivable, however, that the defendant misperceived or misinterpreted Young's movements to reach inside of his coat, or that the victim Evans had grabbed some other object rather than a handgun as it was dark outside." (Wettstein Report at page 14). Had the report

---

[6] Rivera's paranoid personality disorder was not relevant, being a personality disorder rather than a mental disorder. *Commonwealth v. Ventura,* 975 A.2d 1128 (Pa.Super. 2009), *appeal denied,* 604 Pa. 706, 987 A.2d 161 (2009).

8

34

contained an indication that, in Dr. Wettstein's opinion, Rivera's "delusional disorder chronic, persecutory type" mental disorder so affected his state of mind at the time of the shooting such that it created a bona fide belief that he was in danger, the testimony would have been permitted. At best, the report contains the supposition that it was possible that Rivera might have misperceived the events, but that supposition fails to definitively link the possible misperception to a diagnosed mental disorder. For these reasons, the court properly excluded the proposed testimony from Dr. Wettstein.

## CONCLUION:

For the foregoing reasons of fact and of law the trial court did not err in making the evidentiary ruling to exclude Dr. Wettstein's proposed testimony at trial.

_____
Date

_____
Rita Donovan Hathaway, Judge

ATTEST:

_____
Clerk of Courts

c.c.     File
         Lawrence W. Koenig, Esq., Assistant District Attorney
         James E. DePasquale, Counsel for the Defendant

9