J-A16036-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES ANDREW DOLL | : | |
| | : | |
| Appellant | : | No. 2074 MDA 2019 |

Appeal from the Judgment of Sentence Entered December 4, 2019
in the Court of Common Pleas of Franklin County
Criminal Division at No(s):  CP-28-CR-0001117-2018

BEFORE:  PANELLA, P.J., STABILE, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:  **FILED OCTOBER 05, 2020**

James Andrew Doll ("Doll") appeals from the judgment of sentence imposed following his conviction of nine counts of child pornography, and one count each of aggravated indecent assault – complainant less than 16 years of age, aggravated assault without consent, indecent assault – complainant less than 16 years, indecent assault without consent, intercept communications, and corruption of minors.[1]  We affirm.

On July 19, 2017, Jean Schmid ("Schmid") contacted the Pennsylvania State Police (sometimes hereinafter referred to as "PSP"), after her minor daughter, A.S., reported to Schmid that she had been sexually assaulted by

---

[1] 18 Pa.C.S.A. §§ 6312(d); 3125(a)(1), (8); 3126(a)(1), (8); 5703(1); 6301(a)(1)(ii).

Doll.[2]  **See** N.T. (Suppression), 11/26/18, at 5-6; **see also** Affidavit of Probable Cause, 8/4/17.  Relevantly, during a forensic interview conducted by the Franklin County Children's Advocacy Center on August 2, 2017, A.S. stated that Doll attempted to show her pornographic videos on his computers, and that she "believe[d] the girls in the video appeared to be very young." Affidavit of Probable Cause, 8/4/17.  Additionally, Pennsylvania State Trooper Joshua Crouse ("Trooper Crouse") conducted an interview of Schmid.  Schmid told Trooper Crouse that she had observed pornographic websites on Doll's computer, and that she believed Doll's computers may contain pornographic photographs of children, and possibly of A.S.  **Id.**  Schmid indicated that there was a laptop computer in A.S.'s bedroom and a desktop computer in a home office, and that she had recently found a bag of hard drives in the attic of their home.  **Id.**

Based on the information provided by Schmid and A.S., on August 4, 2017, Trooper Crouse applied for a search warrant.  The search warrant Application identified Schmid's residence,[3] and sought "Computers and related electronic equipment ([*i.e.,*] laptops, desktop computers, hardrives [*sic*],

---

[2] Schmid and Doll were married, but separated, at that time.  The couple separated in August 2017, when Schmid was granted a Protection From Abuse Order ("PFA") against Doll.  The couple divorced in December 2017.  **See** N.T. (Suppression), 11/26/18, at 4.  Doll is A.S.'s stepfather.  **See id.** at 5.

[3] Doll was evicted from the couple's shared residence when Schmid obtained the PFA, but his computers remained at the home.

external storage devices, flash[ ]drives, *etc.*); Portable electronic communications devices ([*i.e.,*] cellular phones); iPods[;] and tablet computers." Application for Search Warrant, 8/4/17. In the supporting Affidavit of Probable Cause, Trooper Crouse alleged that

> [t]he collection and examination of the above[-]mentioned items could provide valuable evidence to establish probable cause for the crimes alleged. It is common for persons who engage in sexual misconduct with minors to also collect, store, and share sexual images that are illegal. [A.S.] has indicated that she watched such images with [Doll].

Affidavit of Probable Cause, 8/4/17. A magisterial district judge approved and signed the search warrant ("the first search warrant").

The same day, police executed the first search warrant. Additionally, Schmid consented to the search.[4] Police recovered 2 laptop computers, an Apple iPhone, an Apple iPod Touch, 11 external hard drives (7 of which were found in the attic), 2 computer towers, a power supply switch, 5 SD cards, 20 photographs (found in a safe in the garage), 21 discs, and an SD card located in a Nikon digital camera. Schmid retrieved some of these items from the attic and brought them to the police officers; she also led the officers to the garage to help them recover the photographs.

---

[4] It is unclear from the record when Schmid provided consent for the search. **See** N.T. (Suppression), 11/26/18, at 34 (wherein Trooper Crouse testified that he could not recall whether Schmid consented to the search during the initial interview, or when they arrived at the home with the first warrant).

The PSP's Computer Crimes Unit analyzed the contents of the electronic devices recovered during the search.

> It was discovered during analysis that ten videos were found that consisted of a camera being placed in the bedroom of A[.]S. Two of the videos were [from] a camera that was placed in the bathroom. The two videos obtained from the bathroom were both audiobly [*sic*] and visually recorded and were of [A.S.] being partially or fully nude. Analysis of the evidence indicated that 9 of the 10 videos consisted of [A.S.] being either partially or fully naked in the videos.

Affidavit of Probable Cause (Criminal Complaint), 4/25/18.

On April 25, 2018, Doll was charged, by Criminal Complaint, with the above-mentioned offenses. The Commonwealth filed a Criminal Information on July 9, 2018.

On October 25, 2018, Doll filed an Omnibus Pretrial Motion, including a Motion to Suppress evidence recovered from the "searches of and in the electronic items[.]" Omnibus Pretrial Motion, 10/25/18, at 3. Doll asserted that although the police had authority to search for the electronic devices, they did not have authority to search their contents, and that the first warrant was not sufficiently specific.

On November 21, 2018, Trooper Crouse applied for an additional search warrant. The warrant Application specifically listed the items recovered during the search of Schmid's residence, and stated that the devices would be searched for "[i]mages of child pornography to include images of A.S." Application for Search Warrant, 11/21/18. The supporting Affidavit of

Probable Cause contained the same facts alleged in the first warrant, and additionally alleged as follows:

> The examination of the above[-]mentioned items could provide valuable evidence to establish probable cause for the crimes alleged. It is common for persons who engage in sexual misconduct with minors to also collect, store, and share sexual images that are illegal. [A.S.] has indicated that she watched such images with [Doll]. The items to be searched were seized pursuant to a warrant executed on 08/04/17. The items seized on that date have been in the possession of the Pennsylvania State Police since that date and no persons outside of PSP personnel have had any access to those items[,] as they have been secured and preserved for evidence.

Affidavit of Probable Cause, 11/21/18. A magisterial district judge approved and signed the search warrant ("the second warrant").

The suppression court conducted a hearing on November 26, 2018, and the court granted the parties additional time to file briefs. Doll and the Commonwealth each filed a brief in support of their respective positions concerning suppression. On January 8, 2019, the suppression court entered an Opinion and Order denying Doll's Omnibus Pretrial Motion.

Counsel for Doll subsequently filed a Motion for Limited Intervention, requesting intervention in order to file a motion to strike. Counsel sought to strike certain language contained in the suppression court's Opinion and Order, which, counsel believes, is "impertinent and scandalous and prejudicial[,]" and insinuates impropriety in his brief supporting his Motion to Suppress. The trial court denied the Motion. Counsel appealed. This Court quashed the appeal as interlocutory, and the Pennsylvania Supreme Court

denied allowance of appeal. ***See Commonwealth v. Doll***, 346 MDA 2019

(Pa. Super. 2019) (*per curiam* order), ***appeal denied***, 221 A.3d 184 (Pa.

2019).

On October 23, 2019, Doll entered a conditional guilty plea to all

charges. The parties made no agreement concerning sentencing, but agreed

that Doll's plea would be conditional upon the reservation of his right to

challenge the denial of his Omnibus Pretrial Motion. The trial court accepted

Doll's plea by an Order entered on the same date.[5] The trial court also

deferred sentencing and ordered the preparation of a pre-sentence

investigation report.

On December 4, 2019, the trial court sentenced Doll to an aggregate

term of 14 to 61 years in prison, with credit for time served, as well as fines

and fees. The trial court also directed that Doll have no contact with A.S. or

other females under the age of 18. Additionally, the trial court informed Doll

of his requirements to register and report for his lifetime as a Tier III sexual

offender. This timely appeal followed.

On appeal, Doll raises the following issues for our review:

> 1. Did the [suppression] court err when it denied Doll's [M]otion
> to [S]uppress[,] where Doll's wife lacked authority to consent to
> the searches and seizures of and in the electronic items, and as

---

[5] The Order did not specify that Doll had entered a conditional guilty plea.
Upon Motion by Doll, the trial court amended its Order accordingly. ***See***
Order, 11/8/19.

to such items and their contents[;] the searches and seizures exceeded the scope of the first warrant[;] the first warrant was overbroad and insufficiently particular[;] and the second warrant was tainted by the first and also did not contain probable cause?

Brief for Appellant at 4.[6]

> An appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are erroneous. Where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to plenary review.

*Commonwealth v. Jones*, 121 A.3d 524, 526-27 (Pa. Super. 2015) (citation, brackets and ellipses omitted).

Doll claims that the suppression court erred in denying his Motion to Suppress. *See* Brief for Appellant at 17-63. Doll divides his Argument into four distinct issues, which we will address separately. In his first argument, Doll claims that his wife lacked authority to consent to the search and seizure. *Id.* at 18. Doll avers that the suppression court improperly concluded that

---

[6] In his brief, Doll states that he reviewed the Affidavit of Probable Cause attached to the second warrant, and acknowledges that there is no issue concerning the sufficiency of particularity. Brief for Appellant at 6 n.1.

Schmid, as Doll's wife, had authority to consent to a search of the electronic devices, and the files contained on those devices, by virtue of her joint ownership. *Id.* at 20. According to Doll, the court should have instead considered whether Schmid had mutual use of and joint access to the electronic devices and files. *Id.* at 21. Doll asserts that Schmid "did not possess express, actual, or apparent authority to consent to seizure and search of the items that she did not identify as hers." *Id.* at 29.

Doll claims that Schmid did not have express authority to consent to the search, because there is no evidence that Doll gave her permission to allow anyone to search his electronic devices. *Id.* Additionally, Doll argues that Schmid did not have common or actual authority to consent to the search. *See id.* at 30-39. Relying on case law from other jurisdictions, Doll urges this Court to hold that "a spouse may retain exclusive control over certain areas of his or her life." *Id.* at 33; *see also id.* at 35-36 (drawing a distinction between third-party consent analysis and joint ownership analysis). Doll points to Schmid's identification of all but two electronic devices as Doll's personal computers in support of his assertion that Schmid did not have actual authority to provide consent to a search. *Id.* at 37; *see also id.* at 37, 38-39 (asserting that when Schmid used Doll's computer, she had to ask him for the password). Finally, Doll asserts that Schmid lacked apparent authority to consent to the search, where Trooper Crouse could not recall when Schmid gave her consent to the search; some electronics were located in a shared

office, but Doll had locked himself in that office after work; the police were aware the Doll was the primary user of all but two of the electronic devices; and Schmid indicated that the hard drives found in the attic were Doll's, and she did not know why he kept them. *Id.* at 41-43. Doll also claims that the fact that his devices are password protected indicates that Schmid did not generally have authority to use his devices. *Id.* at 43.

> Warrantless searches and seizures are considered to be unreasonable and therefore, prohibited, except for a few established exceptions pursuant to both the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution.
>
> Both the federal and Pennsylvania constitutions permit third party consent to a search. When police officers obtain the voluntary consent of a third party who has the authority to give consent, they are not required to obtain a search warrant based upon probable cause. …

*Commonwealth v. Hughes*, 836 A.2d 893, 900 (Pa. 2003) (internal citations and quotation marks omitted). "The third-party consent to search is an exception to the exclusionary rule. To evaluate the voluntariness of the consent to a warrantless search, the court must examine the totality of the circumstances." *Commonwealth v. Reese*, 31 A.3d 708, 722 (Pa. Super. 2011).

Third-party consent may be derived from common or apparent authority. *See generally Commonwealth v. Basking*, 970 A.2d 1181, 1184 (Pa. Super. 2009) (describing the doctrines of common authority and

apparent authorities as "corollaries to the consent exception to the warrant requirement[]").

> The United States Supreme Court has held that a third party has actual authority to consent to a search if he/she "possesses common authority over or other sufficient relationship to the premises or effects sought to be inspected." [*United States v.*] *Matlock*, 415 U.S. 164[, ] 171 [(1974)]…. The *Matlock* Court described "common authority" as follows:

>> Common authority is, of course, not to be implied from the mere property interest a third party has in the property. The authority which justifies the third-party consent does not rest upon the law of property, with its attendant historical and legal refinements, but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

> *Id.* at n.7 (citations omitted).

*Basking*, 970 A.2d at 1188; *see also Commonwealth v. Yancoski*, 915 A.2d 111, 114 (Pa. Super. 2006) (stating that "the Supreme Court of the United States explained that 'the Fourth Amendment … recognizes a valid warrantless entry and search of premises when police obtain the voluntary consent of an occupant who shares, or is reasonably believed to share, authority over the area in common with a co-occupant who later objects to the use of evidence so obtained.'" (quoting *Georgia v. Randolph*, 547 U.S. 103, 106 (2006)).

At the suppression hearing, Schmid testified that she and Doll lived together in their home in Greencastle, Franklin County, until she obtained the PFA in early August 2017. N.T. (Suppression), 11/26/18, at 4-5. Schmid stated that she called the Pennsylvania State Police in July 2017, because her daughter, A.S., reported that "she was being molested by [] Doll[,]" and that he had watched pornography with her. *Id.* at 5-6; 7 (wherein Schmid stated that she had informed police that A.S. "felt there had been some things that were looked at that were underage."). Additionally, Schmid testified that she was aware that Doll "frequently viewed pornographic sites[.]" *Id.* at 8.

According to Schmid, there were four computers located in the marital home at that time. *Id.* at 6; 13 (agreeing that the computers were brought into the home after she and Doll were married). Schmid also testified that all of the household computers were on one shared server. *Id.* at 7. Schmid stated that she had told police that she had access to all electronics recovered during the search. *Id.* at 9; *see also id*. (wherein Schmid testified, "They [the computers] were in our offices. They were things that I had common use of."). Schmid explained that she had told police which member of the household was the primary user of each computer. *Id.* at 11-12. Additionally, Schmid testified that Doll primarily used two computers, which were password-protected, but that Doll provided her with the password whenever she needed to use one of those computers. *Id.* at 10.

Further, Schmid testified that she had told police that "they were welcome to review [the electronics] for evidence…." *Id.* at 8. Schmid also told police that they could remove the electronic devices from the marital home. *Id.* at 9.

Trooper Crouse testified at the suppression hearing that during his conversation with Schmid, Schmid "mentioned that [A.S.] told her that there was some pornography that she felt was underage[,] and that [Doll] had also been watching [A.S.] through a vent that adjoined her bedroom with the adjoining office." *Id.* at 16. According to Trooper Crouse, Schmid believed there might be evidence on the computers in their home, and she "related that she would give [PSP] those computers." *Id.*; *see also id.* at 34 (wherein Trooper Crouse testified that he could not recall whether Schmid gave her consent to the search during the initial interview, or when they arrived at the residence with a warrant).

Trooper Crouse stated that based on their conversation, he procured a search warrant for Schmid and Doll's marital home. *Id.* at 16-17. Trooper Crouse then detailed the items recovered during the search:

Item 1 is a compact laptop computer with a power cord. …

* * *

Item 2 is the Dell laptop computer. Item 3 was an Apple iPhone. It was black in color. Item 4 was an Apple iPod Touch. Item 5 is a Next Star external hard drive. Item 6 would be a Seagate external hard drive with a power cord. Item 7 is also a Seagate external hard drive with a power cord. Item 8 is a Dell C-521 tower computer tower with a power cord. Item 9 is a Systematic

tower computer tower with power cord and a mouse. Item 10, I believe, it's a Matsunichi external hard drive. Item 11 is a Seagate external hard drive. Item 12, there's a quantity of seven external hard drives that were found in the attic. Item 13 is a Delta power supply switch. Item 14 is a quantity of five SD cards. Item 15 are 20 photographs from a safe. Item 16 is 21 compact discs, and Item 17 is a[n] SD card from [a] Nikon digital camera.

*Id.* at 17-18; *see also id.* at 18 (explaining that Schmid found various items in the attic and brought them to the police officers conducting the search), 19 (wherein Trooper Crouse stated that Schmid led the officers to the garage to recover the photographs).

During his testimony, Doll confirmed that he and Schmid were married in 2011, and shared a home, which they had purchased together. *Id.* at 38, 40.

Based upon the totality of the circumstances, we conclude that Schmid possessed common authority over the marital home and the electronics at issue, and therefore, had authority to consent to the search and seizure.[7] *See*

_____

[7] We note the suppression court's statement that Schmid had authority to consent to the search and seizure because the electronic devices were jointly-owned marital property. Opinion and Order, 1/8/19, at 4; *see also id.* at 8 (stating that "Schmid was (at the time) [Doll's] wife, she was a co-habitant and co-owner of the residence, she was the co-owner of the devices that were searched, so the [c]ourt can find no ambiguity arising from conversations about whether [Doll] was a primary user of a particular electronic device."). The court also stated that Doll's arguments concerning third-party consent were "red herrings," and inapplicable to the instant case. *See id.* at 4-10. "This Court may affirm the lower court for any reason, including such reasons not considered by the lower court." *Commonwealth v. Clemens*, 66 A.3d 373, 381 n.6 (Pa. Super. 2013) (citation, quotation marks and brackets omitted).

*Basking*, 970 A.2d at 1188. The testimony presented at the suppression hearing, viewed in the light most favorable to the Commonwealth, showed that Schmid and Doll generally shared joint access to and control over the house and the electronics. Although some computers were used primarily by Doll, the record reflects that Schmid "always had access[.]" N.T. (Suppression), 11/26/18, at 10; *see also Commonwealth v. Reese*, 31 A.3d 708, 724 (Pa. Super. 2011) (*en banc*) (concluding that the appellant's housemate had authority to consent to a search of their shared bedroom, as the housemate had "joint access to and control of the same area of the house" as the appellant); *Yancoski*, *supra*. Thus, the suppression court did not err in denying Doll's Motion to Suppress on this basis.[8]

In his second and third arguments, which we address together, Doll raises challenges to the first warrant. Generally, "[w]hen police officers obtain the voluntary consent of a third party who has the authority to give consent,

_____

[8] Because we have concluded that Schmid had authority to consent to the search based on common authority, we need not fully address the issue of apparent authority. However, we would also conclude that, based on the testimony presented at the suppression hearing, the officers could reasonably believe that Schmid had apparent authority to provide consent. *See Commonwealth v. Strader*, 931 A.2d 630, 634 (Pa. 2007) (stating that "the apparent authority exception turns on whether the facts available to police at that moment would lead a person of reasonable caution to believe the consenting third party had authority over the premises."); *see also Basking*, 970 A.2d at 1191 (concluding that a reasonable person would believe that the appellant's mother had apparent authority to consent to search, where mother told police that the appellant stayed on the third floor of the house; the door leading to the third floor was unlocked; and mother stated that if the police found anything, she wanted it out of the house).

- 14 -

they are not required to obtain a search warrant…." ***Hughes***, 836 A.2d at 900. Nevertheless, we will address Doll's claims regarding the first warrant, as the record does not clearly indicate when Schmid consented to the search and seizure. ***See*** N.T. (Suppression), 11/26/18, at 16 (wherein Trooper Crouse testified that Schmid related to police that she would give PSP the computers, then he prepared the search warrant), 34 (stating that he could not recall "exactly where" Schmid gave consent, and did not recall whether police had begun seizing items before they obtained consent).

Doll contends that the search and seizure of the electronic devices and their contents exceeded the scope of the first warrant. ***See*** Brief for Appellant at 44-48. Specifically, Doll argues that the suppression court improperly concluded that the *contents* of his "computers, a desktop computer, a laptop computer, and a bag of hard drives from the attic" fell within the scope of the first warrant. ***Id.*** at 45. According to Doll, the first warrant permitted only the seizure of the devices from the residence. ***Id.*** at 46. Doll therefore avers that the search of the *contents* of the electronic devices was illegal. ***Id.*** at 47-48.

In his third argument, Doll argues that the first warrant was overbroad and insufficiently particular to support the search and seizure of the electronic items and their contents. Brief for Appellant at 48. Doll points to the trial court's acknowledgement that the first warrant was overbroad, reiterates his assertion that Schmid did not provide valid consent to the search, and argues

that without valid consent, the search was illegal. *Id.* at 51. Doll also claims that the first warrant was insufficiently particular because it did not include a request to search the devices' contents. *Id.* at 53. According to Doll, "the warrant description is much broader than any items for which probable cause existed." *Id.* at 55. Doll argues that the Affidavit of probable cause supporting the warrant narrows the scope to the items listed, but does not provide any limitations on a search of their contents. *Id.*

> The Fourth Amendment categorically prohibits the issuance of any warrant except one particularly describing the place to be searched and the persons or things to be seized. This requirement is meant to prevent general searches and ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit. Along those lines, the scope of a lawful search is defined by the object of the search and the places in which there is probable cause to believe that it may be found.

*Commonwealth v. Turpin*, 216 A.3d 1055, 1063-64 (Pa. 2019) (internal citations, quotation marks and brackets omitted). As this Court has explained,

> [i]t is a fundamental rule of law that a warrant must name or describe with particularity the property to be seized and the person or place to be searched…. The particularity requirement prohibits a warrant that is not particular enough and a warrant that is overbroad. These are two separate, though related, issues. A warrant unconstitutional for its lack of particularity authorizes a search in terms so ambiguous as to allow the executing officers to pick and choose among an individual's possessions to find which items to seize. This will result in the general "rummaging" banned by the Fourth Amendment. A warrant unconstitutional for its overbreadth authorizes in clear or specific terms the seizure of an entire set of items, or documents, many of which will prove unrelated to the crime under investigation. … An overbroad warrant is unconstitutional because it authorizes a general search and seizure.

*Commonwealth v. Orie*, 88 A.3d 983, 1002-03 (Pa. Super. 2014) (citation and brackets omitted). Further, "the Pennsylvania Supreme Court has instructed that search warrants should be 'read in a common sense fashion and should not be invalidated by hypertechnical interpretations. This may mean, for instance, that when an exact description of a particular item is not possible, a generic description will suffice.'" *Id.* at 1003 (quoting *Commonwealth v. Rega*, 933 A.2d 997, 1012 (Pa. 2007), *cert. denied*, 522 U.S. 1316 (2008)). "[W]here the items to be seized are as precisely identified as the nature of the activity permits … the searching officer is only required to describe the general class of the item he is seeking." *Commonwealth v. Kane*, 210 A.3d 324, 333 (Pa. Super. 2019) (citation and quotation marks omitted). Specifically, regarding electronic devices, "a warrant may permit the seizure of electronic equipment so long as the search of the equipment is limited to looking for evidence of the specific crimes that the police had probable cause to believe the defendant committed." *Commonwealth v. Green*, 204 A.3d 469, 481 (Pa. Super. 2019).

Here, the first warrant identified the following items to be searched: "Computers and related electronic equipment ([*i.e.,*] laptops, desktop computers, hardrives [*sic*], external storage devices, flash[ ]drives, *etc.*); Portable electronic communications devices ([*i.e.,*] cellular telephones), iPods, and tablet computers." Application for Search Warrant, 8/4/17. The facts alleged in the Affidavit of Probable Cause refer to Doll's computers and a bag

of hard drives located in the attic. Affidavit of Probable Cause, 8/4/17. In its conclusion, the Affidavit of Probable Cause referenced a search of the "above[-]mentioned items" for evidence of the collection, storage, and sharing of illegal sexual images. *Id.*

In its Opinion, the suppression court concluded that the phrase "above[-]mentioned items," as used in the Affidavit of Probable Cause, was limited to only those items specifically mentioned in the Affidavit (*i.e.*, Doll's computers, a desktop computer, a laptop computer, and the bag of hard drives from the attic). *See* Opinion and Order, 1/8/19, at 12, 14, 15.[9]

The suppression court determined that the first warrant was sufficiently particular, and was not overbroad, regarding Doll's computers, a desktop computer, a laptop computer, and the bag of hard drives from the attic. *See* Opinion and Order, 1/8/19, at 14-16. Regarding the particularity requirement, the court noted that the Affidavit of Probable Cause supporting the first warrant (1) described Schmidt's belief that electronic devices in the home contained pornographic videos of children, including videos of A.S., who was 15 years old at the time; (2) stated that "collection and examination of the above[-]mentioned items could provide valuable evidence[]"; and (3) sufficiently informed the court that the police would be searching for child pornography on the mentioned electronic devices. *Id.* at 14. Concerning

---

[9] However, as the suppression court correctly noted, Schmid consented to the search. *See* Opinion and Order, 1/8/19, at 12, 15.

overbreadth, the suppression court additionally noted that the Affidavit of Probable Cause alleged that (1) Doll had admitted to a previous relationship with a minor; (2) A.S. claimed that Doll had touched her inappropriately; and (3) A.S. reported watching pornography on electronic devices with Doll. *Id.* at 15.

We agree with the suppression court's findings and conclusions, which are supported by the record and are free of legal error. The Affidavit of Probable Cause described the information provided by Schmid and A.S., and facts establishing probable cause to believe that child pornography would be found on the mentioned devices. Further, the Affidavit of Probable Cause supporting the first warrant limited the search of the electronic devices to evidence of the collection, storage and sharing of child pornography. *See Green*, 204 A.3d at 482 (concluding that a search warrant was not overbroad where it contained a general description of electronic items to be seized, but limited the search of the seized devices to evidence relating to possession or distribution of child pornography); *Kane*, 210 A.3d at 333 (concluding that a search warrant authorizing the search of a particular external hard drive for files containing child pornography was not overbroad, where the affidavit of probable cause "describe[d] the investigation and the facts that lead [*sic*] to the conclusion that there was a fair probability that child pornography would be found on the external hard driven given the fact that links to the hard drive and evidence of contraband files were found on the home desktop

[computer]."); ***Commonwealth v. Dougalewicz***, 113 A.3d 817, 828 (Pa. Super. 2015) (concluding that search warrants sufficiently identified and limited items to be searched and seized as text message, phone calls and picture mail between two specified phones, regarding the defendant's sexual misconduct with a 14-year-old girl). Thus, Doll's challenges to the first search warrant lack merit.

Finally, Doll challenges the validity of the second warrant. ***See*** Brief for Appellant at 56-63. Because we have determined that Schmid had authority to consent to the search, and we have rejected his challenges to the first warrant, we need not address this claim.

Based upon the foregoing, we affirm Doll's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/05/2020